No. 45          December 29, 2017          511

## IN THE OREGON TAX COURT
## REGULAR DIVISION

### YU CONTEMPORARY, INC.,
*Plaintiff,*

*v.*

### DEPARTMENT OF REVENUE,
*Defendant,*
*and*

### MULTNOMAH COUNTY ASSESSOR,
*Defendant-Intervenor.*

### (TC 5245)

Following litigation of Plaintiff's claims for relief regarding exemption from property tax for certain property owned by an art museum pursuant to ORS 307.130, Plaintiff (taxpayer) submitted a request for attorney fees, costs and disbursements. The court found that under the eight statutory factors regarding award of attorney fees, factors B, F, and H supported an award of attorney fees in this case. Factor C weighed against an award of attorney fees, and factors A, D, E, and G either did not apply or did not support an award of attorney fees. The court in its discretion concluded that on the basis of factors B, F, and H, or any one of them independently, that an award of attorney fees was appropriate. Neither the department nor the county had objected to the amount of fees requested by taxpayer, and the court was not inclined *sua sponte* to consider the reasonableness of the amount of those fees requested.

Submitted on Plaintiff's Statement for Attorney fees, Costs and Disbursements.

Michael J. Millender, Tonkon Torp, LLP, Portland, filed the request for Plaintiff (taxpayer).

Daniel Paul, Assistant Attorney General, Department of Justice, Salem, filed the response for Defendant Department of Revenue (the department).

Carlos A. Rasch, Assistant Multnomah County Counsel, Portland, joined Defendant's response for Defendant-Intervenor Multnomah County Assessor (the county).

Decision for Plaintiff rendered December 29, 2017.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This matter is before the court on the request for attorney fees, costs, and disbursements made by Plaintiff YU Contemporary, Inc. (taxpayer). Defendant Department of Revenue (the department) has filed objections to the request, to which Defendant-Intervenor Multnomah County Assessor (the county) has joined. Taxpayer has responded to those objections.

## II.   BACKGROUND

This case concerned taxpayer's request for exemption from property tax for certain property owned by an art museum pursuant to ORS 307.130.[1]

The county denied taxpayer's request based in part on a visit that the court described as "cursory at best." *YU Contemporary, Inc. I v. Dept. of Rev.*, 22 OTR 349, 367 (2017). The county determined that taxpayer "is not *** the kind of entity that satisfies the various tests for qualifying for exemption under ORS 307.130," and, even if it is, "several aspects of the mixed-use of the property prevent this property from qualifying for exemption." Among those nonexempt or mixed uses was the perceived use of portions of taxpayer's property as a temporary residence for visiting artists.

Taxpayer appealed the county's denial to the Magistrate Division of the court, and then petitioned for special designation to the Regular Division. That petition was granted, as was the county's subsequent motion to intervene as a defendant.

Before the case proceeded to trial, the parties stipulated to a number of facts. These facts related to various aspects about taxpayer, the property at issue, taxpayer's activities on the property, and relevant nonparties associated or previously associated with the property.

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to the 2013 edition.

At trial, the court received testimony and exhibits concerning the nature of taxpayer's operations and the county's investigation. After considering the matter, the court found that the majority of taxpayer's property at issue was subject to exemption.[2] Certain facts will be introduced as necessary in the analysis portion of this order.

## III.  ISSUES

The first issue is whether taxpayer is entitled to costs and disbursements under ORS 305.490(2). The second issue is whether taxpayer is entitled to attorney fees under ORS 305.490(4)(a).

## IV.  ANALYSIS

Taxpayer makes two separate requests. The first request is for costs and disbursements under ORS 305.490(2). The second request is for attorney fees under ORS 305.490(4)(a).

### A.  *Costs and Disbursements*

As explained in Tax Court Rule (TCR) 68, costs and disbursements are "reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services." TCR 68 A(2). The court is authorized to award costs and disbursements by ORS 305.490(2). That statute provides, in relevant part:

> "The party entitled to costs and disbursements on such appeal [to this court] shall recover from the opponent of the party the amount so paid upon order of the court, as in equity suits in the circuit court."

ORS 305.490(2).

TCR 68 B provides that "costs and disbursements *will be allowed* to the prevailing party unless these rules or any other rule or statute direct that in the particular case costs and disbursements will not be allowed to the prevailing party or will be allowed to some other party, or unless the court otherwise directs." (Emphasis added.)

---

[2] Taxpayer did not challenge denial of exemption for portions of the property that were leased out to commercial tenants.

### 1.  *Prevailing party*

Neither party claims that taxpayer is not the prevailing party in this case. The record shows that taxpayer prevailed on showing that the majority of the square footage of the property at issue in this case is exempt from property taxation. The court finds that taxpayer is the prevailing party.

### 2.  *Reasonable and necessary*

In addition, the department does not argue that taxpayer is not entitled to costs and disbursements under any rule, statute, or case, or that such costs and disbursements are not reasonable or necessary. The department limited its objections to attorney fees.

The county, however, appears to also object to taxpayer's request for costs and disbursements. In its joinder to the department's objections, the county stated:

> "For the reasons set forth in Defendant Department of Revenue's Objections to Plaintiff's Statement for Attorney Fees, Costs and Disbursements, the County respectfully requests that the Court deny Plaintiff's *requests* for attorney fees, *costs and disbursements* as both the Department and the County's actions and positions were reasonable and an award of attorney fees, *costs and disbursements* is not merited under ORS 20.075 and ORS 305.490. This is further evidenced by Plaintiff's counsel's representation at trial that it was not seeking attorney fees *and costs* when counsel for the parties were brought into chambers by your honor."

(Emphases added.)

Assuming that the county does object to taxpayer's request for costs and disbursements, such objection is not well taken.

First, the county has cited no rule or statute or case directing that an award of costs and disbursements is not appropriate in this case. *See* TCR 68 B. Any reliance by the county on ORS 20.075 and ORS 305.490 as to *costs* is misplaced. Those statutes concern the availability or appropriateness of an award of attorney fees. They do not govern whether costs and disbursements are allowed.

Second, the county has not explained why the nature or amount of costs requested by taxpayer is not "reasonable" or "necessary" to the litigation in this case. *See* TCR 68 B. Taxpayer requests approximately $1,700 in costs for the filing fee, enlargement of exhibits for display at trial, and taxpayer's portion of transcript fees. The court finds that these costs were both "reasonable" and "necessary" to the litigation in this case.

Third, as will be addressed below in the discussion of whether attorney fees are appropriate, the court does not conclude that taxpayer's counsel intended his unrecorded statement in chambers to permanently waive taxpayer's rights to attorney fees or costs and disbursements.

### 3.   *Conclusion as to costs and disbursements*

Taxpayer is the prevailing party in this case. Taxpayer's requested costs and disbursements were reasonable and necessary to the litigation in this case. The court grants taxpayer's request for costs and disbursements.

### B.   *Attorney Fees*

Having concluded that taxpayer's request for costs and disbursements is granted, the court now considers taxpayer's request for attorney fees. The court is authorized to award attorney fees to the prevailing party by ORS 305.490(4)(a). That statute provides:

> "If, in any proceeding before the tax court judge involving ad valorem property taxation, exemptions, special assessments or omitted property, the court finds in favor of the taxpayer, the court may allow the taxpayer, in addition to costs and disbursements, the following:
>
> "(A)   Reasonable attorney fees for the proceeding under this subsection and for the prior proceeding in the matter, if any, before the magistrate; and
>
> "(B)   Reasonable expenses as determined by the court. Expenses include fees of experts incurred by the individual taxpayer in preparing for and conducting the proceeding before the tax court judge and the prior proceeding in the matter, if any, before the magistrate."

ORS 305.490(4)(a).

As discussed in the analysis concerning costs and disbursements, taxpayer is the prevailing party in this case. Accordingly, the court is authorized to award attorney fees.

However, the court must still evaluate whether an award of attorney fees is appropriate. In doing so, the court considers the factors contained in ORS 20.075(1). *Preble v. Dept. of Rev.*, 331 Or 599, 602, 19 P3d 335 (2001). Those factors are addressed below.

1.  *Factor A*

The first factor the court considers is "[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal." ORS 20.075(1)(a).

Taxpayer argues that the conduct of the county in this case was reckless for two reasons.[3] First, taxpayer argues that the county recklessly denied taxpayer's exemption request based on "Belinda Delow's unannounced inspection of the property on July 1, 2014 and superficial research on YU."

Second, taxpayer argues the county was reckless when it "maintained its position even after entering into an extensive set of stipulated facts covering YU's cultural offerings, donor base, grants from prestigious foundations, and relatively limited use of the building for event rentals."

Considering the latter reason first, the court notes that this factor by its very terms concerns the pre-litigation conduct of the parties. ORS 20.075(1)(a) (concerning conduct that "gave rise to the litigation"); *see also Ellison v. Dept. of Rev.*, 362 Or 148, 170, 404 P3d 933 (2017). Accordingly, the county's actions during the litigation in this case are irrelevant to this factor. They are, however, relevant to other factors, and will be addressed accordingly in the analysis under those factors.

---

[3] In taxpayer's memorandum in support of its request for attorney fees, one of taxpayer's headings is entitled "Recklessness and Bad Faith." However, taxpayer never argued that the county acted in bad faith. To the contrary, taxpayer stated, "There has never been any suggestion that the Assessor or the Department acted maliciously, illegally *or in bad faith*." (Emphasis added.)

The court now turns to taxpayer's first argument under this factor, that the county's denial of taxpayer's request for exemption was recklessly based on an unannounced inspection and inadequate research. Taxpayer chiefly relies upon the following language found in the court's opinion:

> "*The inspection done by the county before its decision on exemption was cursory at best* and the witness for the county concluded that not much of the space in the property was being used. That witness did not take into account the fact that the date of the visit occurred just after completion of one exhibit and in what are significant periods of time between exhibits. The witness also did not take into account that taxpayer is in its organizational and operational infancy, or that on the day of the visit taxpayer was in the process of making major moves of activity areas due to repositioning of exempt and nonexempt activities."

*YU Contemporary, Inc. I*, 22 OTR at 367-68 (emphasis added).

The court declines to make a finding that the county acted recklessly in this regard. As previously mentioned, taxpayer represented at trial, in chambers, that it was not seeking an award of attorney fees. Because this representation was not on the record, the court reproduces the parties' recollections of the discussion below.

In the department's objection to taxpayer's fee request, to which the county joined, it noted:

> "During Ms. [Belinda] Deglow's testimony, the court summoned counsel for all parties to chambers and discussed the relevance of the actions of the county assessor to the tax court's de novo review of the property's qualifications for exemption, and how the assessor's actions might only be relevant in a request for attorney fee awards. Counsel for the plaintiff indicated that the plaintiff was not seeking an award of attorney fees. It is not clear whether plaintiff intended to permanently waive its right to seek attorney fees, but in any event plaintiff should not be allowed to now base its request for attorney fees on Ms. Deglow's actions in denying the exemption, given its previous assertion during her testimony."

In response, taxpayer submitted the following declaration from its counsel:

"During the trial of this case, I participated in an in-chambers discussion with Judge Breithaupt, my co-counsel and opposing counsel during the examination for Belinda Deglow by the Assessor's counsel. My memory of the discussion is as follows: The Assessor's counsel had just started on a line of questions concerning the general practices of the Assessor's office. Judge Breithaupt noted that Ms. Deglow's testimony on this topic would only be relevant if YU was seeking attorney fees. I responded in the negative because, at this stage of the case, I had no intention of seeking attorney fees on YU's behalf. However, I had no intention of permanently waiving YU's right to seek fees. YU decided to petition for fees and costs in February of 2017. The decision was based on the Court's opinion and the entire record of the case, including the rejection of YU's post-trial settlement offer."

Taxpayer relied on that declaration and made the following argument regarding the recklessness of the county:

"In any event, the Department was not prejudiced by Mr. Millender's statement or the Court's directions that may have been based on his statement. Before the Court called the parties into chambers, Ms. Deglow had started to testify on the Assessor's general standards and procedures for reviewing applications for property tax exemption. After discussion in chambers, [the county's counsel's] questions focused more closely on Ms. Deglow's investigation into YU. Ms. Deglow had a full opportunity to discuss her handling of YU's application for exemption, both on direct examination and cross examination. The Department was not prejudiced by this narrower focus, because YU is *not* asserting that there are systemic problems with how the Assessor's office handles exemption applications. Instead, YU is relying on the Court's finding—based on Ms. Deglow's testimony— that her investigation of YU was 'cursory at best.'"[4]

(Emphasis added.)

---

[4] Taxpayer in its response also commented on the actions of the county and its maintenance of its defense during the discovery phase of this case. However, this again is conduct that occurred *during* litigation, and is therefore irrelevant under this factor.

On these recollections the court makes a few comments.

First, both parties agree that the discussion in chambers concerned whether the general practices and procedures of the county in evaluating exemption requests were relevant to the court's determination of whether exemption was appropriate. Those general practices and procedures are, of course, generally irrelevant under this court's *de novo* standard of review. ORS 305.425.

Second, the parties appear to disagree, or at least the department questions, whether taxpayer intended to permanently waive its ability to request attorney fees or costs. Having reviewed and considered the parties' recollections of the in-chambers discussion, the court does not find that taxpayer's counsel did waive or intended to waive taxpayer's ability to request attorney fees or costs during an unrecorded in-chambers discussion regarding the relevancy of the line of questioning.

Third, taxpayer appears to admit that its representations changed the substance of the testimony solicited from Belinda Deglow. On that basis, and the court's review of the transcript, the court finds that the testimony solicited from the witness on direct examination—and therefore cross-examination—was materially altered as a result of the representations of taxpayer's counsel in chambers.

With that context, the court now explains why it declines to make a finding on this factor.

The court's opinion makes clear that it has concerns regarding the extent of the county's investigation in this matter. However, based on taxpayer's representations, the court lacks the context necessary to determine whether the county's denial, based in part on an inspection found to be "cursory at best" is, in fact, reckless.

The record indicates that Belinda Deglow was the only person for the county evaluating exemption requests on a full-time basis, and that she personally handled approximately 200 exemption requests, many of which she granted. The witness began to testify regarding how the county

generally handles exemption requests, but that testimony was narrowed to her actual investigation in this case after discussion in chambers with counsel.

The court is not aware of precisely how much time Deglow had to evaluate the 200 exemption requests. The court is also not aware of whether the county has put certain policies in place restricting the scope of investigations so as to adequately administer the resources it has.

These missing facts *could* give meaningful context to the investigation and ultimate denial of the county. Additional evidence *could* show that a denial based upon a "cursory at best" inspection is not *reckless* when that inspection is coupled with the additional research and investigation done by the county, based upon the administrative resources it has at its disposal.

Of course, such additional evidence *could* show that Belinda Deglow's inspection and investigation in this case was reckless, or that the county's standards themselves are insufficient to guide assessors through a legitimate evaluation of an exemption request. However, that record was not made by taxpayer, and the county's attempt to introduce such contextual information was thwarted by taxpayer's representations in chambers.

On a record made limited by taxpayer, the court declines to find that the county's conduct was reckless. Therefore, the court concludes that factor does not weigh in favor of an award of attorney fees. However, because of the questions raised by the county's investigation before denial, the court also concludes that this factor does not weigh against an award of attorney fees.

2. *Factor B*

The second factor the court considers is "[t]he objective reasonableness of the claims and defenses asserted by the parties." ORS 20.075(1)(b).

The court has previously stated that the test of objective reasonableness is whether a claim or defense is "'entirely devoid of legal or factual support.'" *Patton II v. Dept. of Rev.*, 18 OTR 256, 259 (2005) (quoting *Patton I v.*

*Dept. of Rev.*, 18 OTR 111, 126 (2004)). That test applies both "when the claim is filed and then on an ongoing basis," as the reasonableness of a party's position may change given certain factual developments or changes in the law. *Id.*

In evaluating that test, the court applies the standard of whether "'a reasonable lawyer would know that each of the arguments * * * is not well grounded in fact or is not warranted either by existing law or by a reasonable argument for the extension, modification, or reversal of existing law.'" *Id.* at 261 (quoting *McCarthy v. Oregon Freeze Dry, Inc.*, 334 Or 77, 87, 46 P3d 721 (2002)).

Taxpayer claimed exemption under ORS 307.130. The relevant portions of that statute are reproduced below:

"(1)   As used in this section:

"(a)   'Art museum' means a nonprofit corporation organized to display works of art to the public.

"* * * * *

"(2)   Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"* * * * *

"(f)   The real and personal property of an art museum that is used in conjunction with the public display of works of art or used to educate the public about art, but not including any portion of the art museum's real or personal property that is used to sell, or hold out for sale, works of art, reproductions of works of art or other items to be sold to the public."

ORS 307.130.

Taxpayer argues that both the legal and factual positions of the department and county (Defendants) were objectively unreasonable. Defendants did not dispute that taxpayer is a nonprofit corporation for purposes of ORS 307.130(1)(a). However, they did advance at least four primary theories as to why taxpayer was not entitled to an exemption from property tax.

The first theory advanced was that taxpayer is not an art museum because taxpayer is not primarily "organized to display works of art to the public." ORS 307.130 (1)(a). Essentially, Defendants argued in various ways that taxpayer was an organization designed to benefit its members and its artists, not the public at large.

The court notes that taxpayer's organization is unusual, and accordingly it would not be unreasonable to *initially* question whether it is the type of organization subject to exemption as an art museum. However, after trial, the record on taxpayer's purpose was conclusive. *YU Contemporary, Inc. I*, 22 OTR at 364. Argument to the contrary was objectively unreasonable.

The second theory advanced was that the appropriate standard to be applied was that only so much of taxpayer's property as was *actually and exclusively* used for the purposes contained in ORS 307.130 is subject to exemption.[5]

This theory comprises classic statutory interpretation questions: (1) whether and to what extent the "in conjunction with" language found in ORS 307.130(2)(f) creates a lower bar for art museums to claim exemption for their property, and (2) whether that language was limited only to property used for "the public display of works of art" or also to property "used to educate the public about art."

The court declined to resolve the interpretation issue in its opinion, and instead determined that taxpayer's property, with some exceptions, satisfied the actual and exclusive standard of use. Without implying, one way or the other, whether the department's or taxpayer's interpretation is correct or in what regard, the court concludes that the department's interpretive argument was not objectively unreasonable.

The third theory advanced was that days of nonuse— *i.e.*, days in which exhibitions were not being displayed— should be counted against taxpayer in determining the primary use of the property, similar to days of renting out taxpayer's property for private events. As determined by

---

[5] The relevance being that Defendants also argued that taxpayer's property was not actually and exclusively used for approved statutory purposes.

the court in its opinion, "That assertion finds no basis in the statutes, any rule of the department, or any case." *YU Contemporary, Inc. I*, 22 OTR at 367.

In considering the reasonableness of this argument, the court first considers it in the abstract. Hypothetically, consider a property that is used exactly and only one day per tax period for an exempt purpose, and remains not in use for the remainder of that tax period. Regardless of whether exemption would in fact be appropriate in such a situation, the court cannot state that an argument against exemption based on the extreme nonuse of the property would be an unreasonable "'argument for extension, modification, or reversal of existing law.'" *Patton II*, 18 OTR at 261 (quoting *McCarthy*, 334 Or at 87).

However, extreme nonuse was not the record before the court. There was more than ample evidence that taxpayer worked towards the setting up and taking down of exhibits in the periods of "nonuse." That work was directly related to taxpayer's purpose of displaying art to the public. In addition, taxpayer conclusively demonstrated that the *days of use—i.e.*, exhibitions or private events—were significant in number and were primarily used for exempt purposes. Accordingly, on this record, any argument that periods of "nonuse" in-between exhibitions should count against exemption was not an objectively reasonable "'argument for extension, modification, or reversal of existing law.'" *Id.*

The fourth and final major theory advanced, which is related to, but distinct from, the other theories advanced,[6] is that taxpayer's primary use of the property was not the type of use subject to exemption under the statute. As just stated, the record in this case conclusively demonstrated that days of exempt use heavily outweighed days of nonexempt use.

Except for the statutory construction issue in this case, the court finds that the arguments of Defendants were objectively unreasonable. The arguments made by

---

[6] The first theory looked at the primary *organizational purpose*. The second theory looked to *the legal standard* with which to consider the use of the property. The third theory focused on periods of perceived *nonuse of the property*. This theory concerns the *use* of the property.

Defendants were not based upon any reasonable application of the facts of this case to the law, but rather to an idiosyncratic belief that taxpayer is not worthy of a property tax exemption as an organization that displays works of art to the public because it acquires art differently from other organizations that *collect* art for the purposes of display.

This factor weighs in favor of an award of attorney fees.

### 3. *Factor C*

The third factor the court considers is "[t]he extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases." ORS 20.075(1)(c).

Some pertinent findings in this case were based on evidence that was introduced at trial. Therefore, although the record in this case was conclusive at the culmination of this case, it was not as definitive at the time the county denied the exemption request or at the time taxpayer filed its complaint in this court.

Of course, as previously discussed, there is a looming question on whether the county's investigation was sufficient in this case. If it was not, the failure to know certain facts may be attributable to the insufficiency of the investigation, which may cast a shadow on the good faith nature of the defense.

However, it is conceivable that an award of attorney fees in this case could deter county assessors in the future from denying exemption requests of art museums and defending those denials in this court. At the time taxpayer filed its complaint, the county was entitled to let taxpayer prove its case.

The court concludes that this factor weighs against an award of attorney fees in this case.

### 4. *Factor D*

The fourth factor the court considers is "[t]he extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses." ORS 20.075(1)(d).

This court does not find that the county's defense was meritless at the start of this litigation. Accordingly, this factor does not apply.

5. *Factor E*

The fifth factor the court considers is "[t]he objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings." ORS 20.075(1)(e).

Taxpayer argues that the department was not diligent in this case because it did not take a more active role in the trial or the stipulation of facts. The court is not convinced that the apparent agreement between the department and the county as to which party would assert which issue or issues is evidence of a lack of diligence on the part of either defendant. The court concludes that this factor does not support an award of attorney fees.

6. *Factor F*

The sixth factor the court considers is "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute." ORS 20.075 (1)(f).

The record establishes that taxpayer attempted to settle this case three times on reasonable terms. Each of those offers was rejected by the county with no counteroffer.

The first offer was made before this case was specially designated to the Regular Division. Taxpayer proposed a settlement based on information that it had obtained from the county regarding how other art museums treat private event rentals of museum space.

That offer was rejected because the county was concerned that the primary use of the property was not in accordance with the statute on exemptions, ORS 307.130. No counteroffer was made.

The second offer was made about a month before trial, and before the parties had filed their stipulation of facts in this court. Taxpayer's second offer proposed a settlement based on taxability of the print shop and the studios on the mezzanine and upper level.

That offer was rejected without explanation or counteroffer, but the county's counsel suggested that taxpayer revise the offer to include taxability of the space used for private events. In doing so, county counsel cautioned that it was not certain whether such a revision would change the county's position on settlement.

Taxpayer accordingly authorized its counsel to expand its second offer to include taxability of spaces used for private events in accordance with how other art museums treat such space. Taxpayer believed that taxation on such spaces for the time used for private events was not required under the statute, and made that known to the county. ("In other words, the county would be getting the opportunity to tax square footage that would not otherwise be taxable as long as YU is using it for art display purposes.")

Taxpayer's modified second offer was also rejected. The county believed that taxpayer simply did not qualify as an exempt organization, and stated through its counsel that it "would prefer to have the court decide."

After trial, taxpayer made a third settlement offer. Taxpayer proposed taxation of the print shop and the studios. That settlement offer was also rejected by the county with no counteroffer.

Having summarized taxpayer's attempts to settle this case, the court may now address whether an award of attorney fees is appropriate under this factor. Taxpayer appears to argue that the county was unreasonable during settlement negotiations in part because the county could have settled on better terms and in a better position than the results at trial.

The court does not find the specific outcome at trial particularly relevant when considering the terms of settlement offered by taxpayer. That outcome was unknowable at the time the parties were engaging in settlement negotiations. Rather than reviewing whether the terms of each settlement offer were better or worse than the outcome at trial, the court considers whether the terms of the settlement offers were reasonably crafted based on the knowledge of the parties at the time.

The court finds that the terms upon which taxpayer was willing to settle this case were reasonably crafted. They were based on information obtained from the county, and they were crafted to respond to the concerns of the county as to mixed or nonexempt uses.

The county's rejection of these offers appears to the court to have been almost entirely based on its belief that taxpayer is not the type of organization entitled to an exemption for property of art museums. Otherwise, the county would have settled with taxpayer because taxpayer's offers addressed the mixed use or perceived residential use of taxpayer's property. As previously explained, the county's belief that taxpayer is not an art museum for purposes of ORS 307.130 was objectively unreasonable after the parties had filed their stipulation of facts and the trial in this matter had concluded.

A taxing authority is not required to accept a proposed settlement agreement to avoid an award of attorney fees. However, failure to do so must be taken into account, particularly when such proposed agreements were reasonable in nature and were calculated to alleviate the concerns of the county as to certain uses of the property.

This court concludes that this factor weighs in favor of an award of attorney fees.

7.  *Factor G*

The seventh factor does not apply to this court. *See St. Mary Star of the Sea II v. Dept. of Rev.*, 22 OTR 496, 508-09 (2017).

8.  *Factor H*

The eighth and final factor the court considers is "[s]uch other factors as the court may consider appropriate under the circumstances of the case." ORS 20.075(1)(h).

Some of the reasons supporting an award of attorney fees in this case relate to multiple factors. In an attempt to give due effect to each factor, the court has attempted to limit discussion of those reasons in the analysis above. However, at this time it is appropriate to comment more generally upon the litigation in this case.

The county's conduct in this case is very problematic.[7] It appears to the court that from the very start the county has taken an unduly narrow view of what the legislature intended when it exempted certain property of art museums from property taxation. It also appears to the court that the county adopted its initial view of whether exemption was appropriate and thereafter stubbornly refused to reconsider that view even in light of the evidence that was introduced by taxpayer.

As explained in taxpayer's request for attorney fees and response to Defendants' objections, there was no need to go through to trial to litigate the majority of the issues in this case. The uses of the property that were questionable, such as the print shop or the studios, were taxable under taxpayer's proposed settlement agreements.

The question of whether individuals were living in the studio portions of the property—which the court found not to be the case—was made moot by taxpayer offering to agree to taxation of those portions of the property.

The question of how to treat private rentals of art museum property was addressed by two of the proposed settlement agreements made by taxpayer.

Nevertheless, the county rejected each of these overtures, without any counteroffer, and therefore forced taxpayer to fully litigate this case on those issues.

In reviewing the totality of the factors, the interplay between them, and the stubbornness of the county in its attempt to prove that taxpayer is not entitled to an exemption *for any portion* of taxpayer's property, the court finds this factor weighs strongly in favor of an award of attorney fees. If a county forces a taxpayer through to trial and then loses soundly, it puts itself in a position whereby its actions may well be the basis of a fee award.

It must also be noted that, where the department sees a county on a crusade to prove an exemption is not proper, the department has an interest in considering whether that crusade is objectively reasonable. If it is not,

---

[7] And by extension, the department's acquiescence to the county's conduct.

the department may consider using its supervisory authority to effect a settlement. Otherwise, the department will be required to pay the eventual fee award. ORS 305.490 (4)(b). As this court has previously stated, "Crusades can be costly." *Angel II v. Dept. of Rev.*, 22 OTR 106, 112 (2015).

### 9.   *Conclusion as to attorney fees*

Factors B, F, and H support an award of attorney fees in this case. Factor C weighs against an award of attorney fees in this case. Factors A, D, E, and G either do not apply or do not support an award of attorney fees in this case.

The court in its discretion concludes that on the basis of factors B, F, and H, or any one of them independently, that an award of attorney fees is appropriate in this case. Neither the department nor the county has objected to the amount of fees requested by taxpayer, and the court is not inclined *sua sponte* to consider the reasonableness of the amount of those fees requested.

Accordingly, taxpayer's request for attorney fees is granted.

## V.   CONCLUSION

The court has considered taxpayer's requests for attorney fees, costs, and disbursements, and the objections thereto. The court grants taxpayer's requests, including taxpayer's supplemental statement of attorney fees for work related to securing its award of fees and costs, except as to taxpayer's anticipatory request of $2,500 for "efforts that will be undertaken if the Court convenes a hearing on Plaintiff's Statement."[8] Now, therefore,

IT IS ORDERED that Plaintiff's requests for attorney fees, costs and disbursements are granted, except as to the $2,500 amount requested in anticipation of a hearing on this matter.

IT IS FURTHER ORDERED that Plaintiff will prepare and submit a form of supplemental judgment.

---

[8]  No hearing was held on this matter. Plaintiff moved for leave to file a supplemental statement; to the extent necessary, that motion is granted.