22 April 6, 2018 No. 3

IN THE OREGON TAX COURT
REGULAR DIVISION

SENECA SUSTAINABLE ENERGY, LLC,
*Plaintiff,*
*v.*

LANE COUNTY
and Department of Revenue,
*Defendants.*

(TC 5193; TC 5208)

Following litigation of the merits of this case, Plaintiff (taxpayer) submitted a request for attorney fees, reasonable expenses, and costs and disbursements. Defendant Department of Revenue (the department) objected to attorney fees, but not to costs and disbursements. Pursuant to ORS 305.490(2), ORS 305.490 (4)(a)(B), ORS 305.490(4)(a)(A), and using the statutory factors listed in ORS 20.075, the court ruled that taxpayer's requests for costs and disbursements and reasonable expenses were granted; taxpayer's request for attorney fees was denied with respect to any fees related to defending against the department's motion to dismiss; taxpayer's request for supplemental attorney fees was granted, subject to an opportunity for the department to object to the amount of supplemental fees requested. Taxpayer's request for attorney fees was otherwise granted.

Submitted on Plaintiff's Request for Attorney Fees, Reasonable Expenses, and Costs and Disbursements.

Cynthia M. Fraser, Garvey Schubert Barer PC, Portland, filed the request for Plaintiff (taxpayer).

Marilyn J. Harbur, Senior Assistant Attorney General, Department of Justice, Salem, filed the response for Defendant Department of Revenue (the department).

Decision rendered April 6, 2018.

**HENRY C. BREITHAUPT, Senior Judge.**

## I. INTRODUCTION

This matter is before the court on the request for attorney fees, reasonable expenses, and costs and disbursements by Plaintiff Seneca Sustainable Energy, LLC (taxpayer). Defendant Department of Revenue (the department) has objected to taxpayer's request for fees, but not taxpayer's reasonable expenses or costs and disbursements. Defendant Lane County (the county) did not file a response. Taxpayer

has responded to those objections, to which the department has replied.

## II.   FACTS

This case concerned the valuation of a woody biomass cogeneration facility for tax year 2012-13 and 2013-14, which facility was subject to an enterprise zone exemption from property tax under ORS 285C.175.[1]

The department was responsible for appraising the property under ORS 306.126. The department appraised the property at a real market value (RMV) of $62,065,350 for tax year 2012-13, and approximately $58,500,000 for tax year 2013-14.[2]  In accordance with ORS 285C.175(7)(a), the assessed value (AV) of the property was placed on the roll for each tax year as a notation as if it were not exempt.

Taxpayer appealed the department's appraisal of the subject property for each tax year to the court.

Even though the facility was largely subject to an exemption from property tax (except at least as to the land value), taxpayer appealed the valuation of the facility. Taxpayer did so in part because it owed certain public contribution payments to the City of Eugene (the city) on the basis of the RMV of the property in each year.

As part of taxpayer's appeal to the court, taxpayer filed claims against the city to require the city to recalculate the public contribution payments in accordance with a hopeful reduction of RMV. On the city's motion, the court dismissed the city as a party because it concluded it did not have jurisdiction over those claims.

The department also moved to dismiss taxpayer's valuation claims on the basis that taxpayer is not aggrieved

---

[1] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2011.

[2] In taxpayer's request for attorney fees, it stated the roll value for tax year 2013-14 was $55,968,536. The department contends the roll value was $58,554,330, which is the same value included in taxpayer's post-trial briefing. The court's summation of the RMV listed in the property tax statements attached to taxpayer's complaint for tax year 2013-14, which attachments could have been more clear, results in a total of $58,544,330. Ultimately, these discrepancies do not affect the result in this order.

by a notational RMV determination, which would only result in a tax liability to taxpayer if it was disqualified from exemption. The court denied the department's motion to dismiss because there is no statutory basis for a taxpayer to "wait and see" whether it needs to challenge the RMV for a particular tax year. *Seneca Sustainable Energy v. Lane County Assessor*, 21 OTR 366, 370 (2014).

The department requested the court enter a limited judgment on the jurisdictional issue. Taxpayer argued that a limited judgment on the jurisdictional issue would not be appropriate where the denial of the motion to dismiss did not resolve one or more claims. The court determined that the case should proceed on the merits of taxpayer's valuation challenge to remove any concern over the ability to appeal the jurisdictional issue.

As the case proceeded to trial, taxpayer moved *in limine* to disqualify the department from offering valuation evidence for tax year 2013-14 for failure to follow the exchange requirements in Tax Court Rule (TCR) 56 B(2)-(4).[3] The court granted taxpayer's motion.

After trial, the court determined that taxpayer's appraisal was far more persuasive than the department's appraisal, and ordered that the rolls be changed to reflect the values demonstrated by taxpayer.

The court found that the department's appraiser improperly took into account the intangible value of a Power Sales Agreement (PSA), which PSA allowed taxpayer to sell electricity at rates higher than the market rate. The court also found that the department's appraiser improperly calculated the capitalization rate by taking into account the cost of capital of an identified group of purchasers, and not the market-perceived risk of the property.

After the court found in favor of taxpayer on the valuation issue, taxpayer filed its request for attorney fees, reasonable expenses, and costs and disbursements.[4]

---

[3] The department had prepared and exchanged an appraisal for tax year 2012-13.

[4] Both parties appealed from the court's judgment in this matter. Thereafter, taxpayer dismissed its appeal. The department is still pursuing its appeal to the Supreme Court.

## III.   ISSUES

There are three issues relating to taxpayer's request. The first issue is whether taxpayer is entitled to the costs and disbursements it requested. The second issue is whether taxpayer is entitled to the reasonable expenses it requested. The third issue is whether taxpayer is entitled to the attorney fees it requested.

## IV.   ANALYSIS

Taxpayer makes three separate requests. The first request is for costs and disbursements under ORS 305.490(2). The second request is for reasonable expenses under ORS 305.490(4)(a)(B). The third request is for attorney fees under ORS 305.490(4)(a)(A). The court will address these requests in turn.

### A.   *Costs and Disbursements*

The court first considers taxpayer's request for costs and disbursements. As explained in TCR 68, costs and disbursements are "reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services." TCR 68 A(2). The court is authorized to award costs and disbursements by ORS 305.490(2). That statute provides, in relevant part:

> "The party entitled to costs and disbursements on such appeal [to this court] shall recover from the opponent of the party the amount so paid upon order of the court, as in equity suits in the circuit court."

ORS 305.490(2).

TCR 68 B provides that "costs and disbursements will be allowed to the prevailing party unless these rules or any other rule or statute direct that in the particular case costs and disbursements will not be allowed to the prevailing party or will be allowed to some other party, or unless the court otherwise directs."

The department does not appear to object to taxpayer's request for approximately $3,000 for costs and disbursements.[5] The record shows that taxpayer is the

---

[5] The department concluded its response by asking the court to "deny an award of attorney fees and expenses because it is not justified under the factors

prevailing party, having prevailed in receiving a reduction in RMV and AV as shown on the roll as a notation for both tax years at issue.

The amounts requested by taxpayer are for copies, faxes, filing fees, in-house photocopies, in-house scans, and outside document production services. Absent objection from the department, the court is not inclined to find that the types or total amount of expenses requested by taxpayer are either unreasonable or unnecessary.

The court grants taxpayer's request for costs and disbursements.

B.  *Reasonable Expenses*

The court now considers taxpayer's request for reasonable expenses under ORS 305.490(4)(a)(B). That statute provides that the court may award to the prevailing party

> "[r]easonable expenses as determined by the court. Expenses include fees of experts incurred by the individual taxpayer in preparing for and conducting the proceeding before the tax court judge and the prior proceeding in the matter, if any, before the magistrate."

ORS 305.490(4)(a)(B).

Taxpayer requests approximately $80,000 as reasonable expenses for three items. The first item is preparing the appraisal report. The second item is expert witness fees for Tim Landolt, taxpayer's appraiser, for his testimony during trial. The third item is a "feasibility study prepared by Bill Carlson and his trial expert time."

As with taxpayer's request for costs and disbursements, the department does not appear to object to taxpayer's request for reasonable expenses.[6]

---

in ORS 20.075." Even reading that statement broadly so as to encompass an objection to taxpayer's request for costs and disbursements, the department's arguments under ORS 20.075 only apply to a request for an award of *attorney fees*. The department's response brief only addressed the attorney fee factors under ORS 20.075, and therefore did not object to taxpayer's request for costs and disbursements in any material way.

[6] Under the same reasoning as discussed in note 5, the court concludes the department did not object to taxpayer's requested reasonable expenses in any material way.

The record shows that trial lasted eight days.[7] The court has no difficulty concluding that the expenses for the appraisal report and the testimony of taxpayer's appraiser, Tim Landolt, were reasonably incurred. With respect to the feasibility study prepared by and testimony of Bill Carlson, taxpayer provided no explanation as to the reasonableness of the expenses requested.

Even though the department has not objected to taxpayer's request for reasonable expenses, ORS 305.490(4)(a)(B) requires the court to determine which expenses are "reasonable expenses." In that endeavor, the court has reviewed the briefing of the parties relating to the substantive case.

It appears to the court that Carlson's work was important to taxpayer's case. His testimony is materially cited in taxpayer's briefing, and taxpayer's appraiser specifically relied upon Carlson's feasibility study in preparing the appraisal report. The court concludes that the expenses for the feasibility study and Carlson's testimony were reasonably incurred.

The court grants taxpayer's request for reasonable expenses.

## C.  *Attorney Fees*

The court finally considers taxpayer's request for attorney fees. The court is authorized to award attorney fees to the prevailing party by ORS 305.490(4)(a). That statute provides:

> "If, in any proceeding before the tax court judge involving ad valorem property taxation, exemptions, special assessments or omitted property, the court finds in favor of the taxpayer, the court may allow the taxpayer, in addition to costs and disbursements, the following:
>
> "(A)   Reasonable attorney fees for the proceeding under this subsection and for the prior proceeding in the matter, if any, before the magistrate; and
>
> "(B)   Reasonable expenses as determined by the court. Expenses include fees of experts incurred by the individual taxpayer in preparing for and conducting the proceeding

---

[7] Trial was held April 6 to 15, 2015.

before the tax court judge and the prior proceeding in the matter, if any, before the magistrate."

ORS 305.490(4)(a).

As discussed in the analysis concerning costs and disbursements, taxpayer is the prevailing party in this case. Accordingly, the court is authorized to award attorney fees.

However, the court must still evaluate whether an award of attorney fees is appropriate. In doing so, the court first considers the factors contained in ORS 20.075(1) to determine whether it will award any attorney fees. *Preble v. Dept. of Rev.*, 331 Or 599, 602, 19 P3d 335 (2001). Then, the court considers the factors contained in ORS 20.075(2) to determine the amount of fees that will be awarded.

1.  *Award of Fees*

The factors addressing whether to award of attorney fees are addressed below.

a.   Factor A

The first factor the court considers is "[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal." ORS 20.075(1)(a).

This factor addresses the prelitigation conduct of the parties. The only prelitigation conduct of the department relied upon by taxpayer as a potential basis for attorney fees is that of the department's unwillingness to adjust its valuation position after receiving a tour of taxpayer's facility and a presentation on the non-value added costs of the facility. The indication is that there were certain pollution-control costs associated with the facility that did not add value to the property.

Apparently, Todd Payne, Seneca's plant manager, had "used the same method and manner in reporting the non-value costs of the co-generation project as he had two previous projects for the Seneca family companies, both of which had been accepted by the Department of Revenue."

To the extent that it matters, the court relied on the income approach to value in its opinion, and made no finding on whether taxpayer's treatment of non-value added costs was correct.[8] Regardless, assuming that the department has in fact accepted the same type of accounting twice before, that fact does not weigh in favor of attorney fees under this factor.

Taxpayer has not provided enough information for the court to conclude that the department's apparent change of opinion regarding non-value added costs was the result of recklessness, willfulness, maliciousness, or bad faith, or that it was illegal. The department's change of opinion could have just as likely been the result of more careful scrutiny of taxpayer's position. There is insufficient evidence to conclude one way or the other.

This factor is neutral, weighing neither in favor of nor against an award of attorney fees.

b.   Factor B

The second factor the court considers is "[t]he objective reasonableness of the claims and defenses asserted by the parties." ORS 20.075(1)(b).

The court has previously stated that the test of objective reasonableness is whether a claim or defense is "'entirely devoid of legal or factual support.'" *Patton II v. Dept. of Rev.*, 18 OTR 256, 259 (2005) (quoting *Patton I v. Dept. of Rev.*, 18 OTR 111, 127 (2004)). That test applies both "when the claim is filed and then on an on-going basis," as the reasonableness of a party's position may change given certain factual developments or changes in the law. *Id.*

In evaluating that test, the court applies the standard of whether "'a reasonable lawyer would know that each of the arguments *** is not well grounded in fact or is not warranted either by existing law or by a reasonable

---

[8] The court stated, "While the cost indicator developed by the appraiser for taxpayer can serve as something of a check on the reasonableness of the value determined on the basis of the income indicator, the court places no other reliance on the cost indicator." *Seneca Sustainable Energy, LLC II v. Dept. of Rev.*, 22 OTR 263, 269 (2016).

argument for the extension, modification, or reversal of existing law.'" *Id.* at 261 (quoting *McCarthy v. Oregon Freeze Dry, Inc.*, 334 Or 77, 87, 46 P3d 721 (2002)).

In this case, there are three main issues that the court considers. The first issue is whether the department's jurisdictional arguments made in its motion to dismiss were objectively reasonable. The second issue is whether the department's arguments regarding valuation of the property for tax year 2012-13 were objectively reasonable. The third issue is whether the department's failure to prepare an appraisal report for tax year 2013-14 was objectively reasonable.

(1)   Jurisdictional Arguments

With respect to the first issue, the jurisdictional arguments of the department, the court concludes that the arguments of the department were objectively reasonable. The jurisdiction of this court is provided for by statute. ORS 305.410(1) provides, in relevant part, that "the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state."

The statutory language used in ORS 305.410(1) is broad in scope, the limits of which are not always easily understood. The Supreme Court has provided a general framework within which this court can determine whether it has jurisdiction over particular claims. *Sanok v. Grimes*, 294 Or 684, 662 P2d 693 (1983). That framework, albeit helpful, does not alleviate the duty of the court to engage in careful statutory analysis to determine whether a particular claim is within its jurisdiction. *Compare Perkins v. Dept. of Rev.*, 22 OTR 370 (2017) (holding collection claims relating to the department's issuance and enforcement of timber tax warrants are outside the tax court's jurisdiction), *with Christensen v. Dept. of Rev.*, 22 OTR 384 (2017) (holding that collection claims relating to installment plans with the department are within the tax court's jurisdiction).

The jurisdictional question in this case was challenging. Notwithstanding the fact that taxpayer's property

was, in each year of its appraisal, exempt from taxation under an enterprise zone agreement,[9] does the court have jurisdiction to consider taxpayer's valuation claim in those years?

The department argued that the court does not have jurisdiction over taxpayer's claims because taxpayer is not aggrieved by a property valuation when that valuation does not result in any additional tax because the property is exempt.[10] In making that argument, the department relied upon a variety of statutes and case law arguably supporting its position.

For the reasons described in the April 8, 2014, order, the court disagreed with the department. However, the court concludes that the department's jurisdictional arguments were objectively reasonable. They were not "entirely devoid of legal or factual support." *Patton II*, 18 OTR at 259.

(2)    2012-13 Valuation

With respect to the second issue, the department's valuation arguments for tax year 2012-13, the court concludes that the arguments of the department were objectively unreasonable in key respects. The analysis as to the department's arguments is contained in the court's opinion. *Seneca Sustainable Energy, LLC II v. Dept. of Rev.*, 22 OTR 263, 269-73 (2016). The court will not recreate the entire analysis here. However, the court will address whether the two fundamental errors identified in the department's appraisal were objectively unreasonable. Those weaknesses rendered the department's appraisal "completely without persuasive value." *Id.* at 269.

The first error of the department's appraisal was the inclusion of intangible value in contravention of ORS 307.030(2). The department's appraiser did this in two ways.

---

[9] Except for the land value, which value was subject to assessment and taxation.

[10] The department also argued that the court has no jurisdiction to consider taxpayer's claims regarding the public benefit contribution payment, which payment was based on the value of taxpayer's property in each year it was exempt from property taxation. The court agreed with the department, and dismissed taxpayer's claims in this regard.

First, the department's appraiser relied upon the Power Sales Agreement to determine what he believed were the market rates for selling energy, capacity, and renewable energy credits. However, the evidence in this case overwhelmingly supported a finding that the rates under the PSA were not available in the market. Accordingly, the department's appraiser effectively valued the intangible value of the PSA in contravention of ORS 307.030(2).

The department's failure to instruct its appraiser to not consider the intangible value of the PSA, and to instead only rely upon market evidence, was objectively unreasonable. Of course, the department cannot tell its appraiser what the appraisal conclusions must be. However, the department has a duty to ensure that the appraisal it defends is in reasonable conformity with Oregon law.

The second way in which the department's appraiser included intangible value in his appraisal is also objectively unreasonable. As explained in the court's opinion:

"The appraiser for the department admitted in testimony that he valued the entire property and business of taxpayer, subtracting only an amount of working capital. That approach is contrary to Oregon law as it has the effect of making intangible assets subject to assessment in contravention of ORS 307.030."

*Id.* at 271.

Unlike the PSA error, which was based at least in part upon an erroneous factual understanding of the energy market, this error was purely one of theory, and clearly in violation of Oregon law. On that basis, the court considers this to be a much more serious error than the PSA error. The department's arguments and its appraiser's positions resulted in the clear inclusion of intangible value of the subject property.

The second fundamental error of the department's appraisal was the calculation of the capitalization rate. As explained in the court's opinion, the department's appraiser determined a capitalization rate by identifying a group of likely purchasers and evaluating their cost of capital. That approach is contrary to accepted financial and appraisal

principles, and the department's appraiser could cite to no authority supporting his approach. *Id.* at 271-73. The department's reliance on its appraiser's findings in this regard was objectively unreasonable.

In summary, the department's defense of and reliance on its appraiser's fundamentally flawed appraisal report and methodology was objectively unreasonable in both law and fact.

### (3)   2013-14 Valuation

With respect to the third issue, the department's failure to prepare an appraisal report for tax year 2013-14, the court concludes that the arguments of the department were objectively unreasonable. However, the court cautions that the failure to prepare an appraisal report does not, in this case, support an award of attorney fees. An analysis of the context surrounding that fact is important.

It must be understood that the failure to prepare an appraisal report does not mean that the department intended to offer no evidence of value for tax year 2013-14. In fact, the department intended to offer trending data to establish value for tax year 2013-14 based on the value determined by the department's appraiser for tax year 2012-13. However, the department was prohibited from introducing or relying upon that evidence because it failed to exchange it in accordance with TCR 56. *See Seneca*, TC 5193 (Apr 6, 2015) (slip op).

Although serious in its effect on the remainder of the proceedings, the court does not conclude that the department's appraisal exchange mistake is an example of an objectively unreasonable argument or defense. However, that lack of evidence must be considered with respect to whether the department's arguments as to value for tax year 2013-14 are thereafter objectively reasonable.

In that regard, the court observes that, notwithstanding the department's inability to introduce evidence to establish value for tax year 2013-14, the department was not proscribed from arguing that taxpayer's evidence of value was not persuasive. In fact, the department made

such arguments as to tax year 2013-14 by reference to the material differences in appraisal methodology and theory employed by the parties' appraisers in their reports for tax year 2012-13.

Although the department's arguments were not ultimately persuasive, the court is hesitant to conclude that the department's defense as to tax year 2013-14 was objectively unreasonable solely for the failure to prepare an appraisal report for tax year 2013-14. The court's hesitation is based on the following observations.

First, taxpayer had the burden of proof in these proceedings. Although the department is required to introduce evidence of value if it wishes to *establish value*, nothing in the tax statutes requires the taxing authority to introduce evidence of value if it merely wishes to defend the roll value against a taxpayer's assertion of value.[11]

Second, the department's arguments as to tax year 2013-14 relied upon appraisal evidence relevant to tax year 2012-13. Although each tax year stands alone, the tax years in this case were consolidated for trial. On that basis, it is not objectively unreasonable to attempt to persuade the court that, if an opposing party's appraiser materially misapplied Oregon law or appraisal theory in tax year 2012-13, the appraiser also likely materially misapplied Oregon law or appraisal theory in tax year 2013-14.[12]

However, because the court has concluded that the department's arguments relating to tax year 2012-13 were objectively unreasonable in key respects, the reliance upon those same arguments in tax year 2013-14 is objectively unreasonable.

---

[11] Consider an extreme example. A taxpayer that owns a fully rented commercial high-rise in good condition and in a desirable location in downtown Portland believes that the property is worth only $10. Assume the roll value for the property is $10 million. If that taxpayer appeals the roll value to the court, it does not appear to be objectively unreasonable for the taxing authority to merely defend the roll value, and not seek to establish an independent opinion of value.

[12] Of course, it is not clear how effective that line of argument is when each tax year stands alone, assuming the taxing authority does not have an appraisal expert testify as to appraisal theory employed by the taxpayer's appraiser in tax year 2013-14.

The court concludes that this factor weighs in favor of an award of attorney fees.

    c.   Factor C

The third factor the court considers is "[t]he extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases." ORS 20.075(1)(c).

Although taxpayer refers to deterrence at various times in its memorandum supporting its request for attorney fees, taxpayer failed to materially address this factor or the next factor. The department appears to argue that an award of fees in a technical valuation dispute would have an unnecessary chilling effect on future technical valuation litigation.

As discussed, the court does not consider the department's jurisdictional defense to have been objectively unreasonable in this case. However, the department's objectively unreasonable valuation arguments must be taken into account to determine whether an award based on those arguments would deter a taxing authority in the future from defending against a taxpayer's valuation claims.

To the extent that the court awards fees for severe shortcomings of the department's valuation defense in the form of objectively unreasonable arguments, the court does not find that an award of attorney fees would significantly deter others from asserting good faith claims or defenses. To the extent of the arguments regarding valuation, this factor does not weigh against an award of attorney fees.

If the court also awards attorney fees to taxpayer for responding to good faith arguments of the department, such as the jurisdictional argument, the court finds that an award of attorney fees *would* deter others from asserting good faith claims or defenses. To that extent, this factor does weigh against an award of attorney fees.

Final resolution of this factor is discussed below in the court's conclusion on whether to award attorney fees.

d.   Factor D

The fourth factor the court considers is "[t]he extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses." ORS 20.075(1)(d).

The court does not conclude that an award of fees as to the department's jurisdictional arguments would deter others from asserting meritless claims. The department's jurisdictional arguments were reasonably raised and argued. To the extent that an award of fees as to such defense might deter others from asserting meritless claims, the court does not, as a matter of policy, consider that fact to be a permissible basis upon which to award fees under this factor.

However, the department's claims and defenses with respect to the valuation issue in this case were without merit. As discussed more fully in factor B, the department had a responsibility to ensure that its appraiser was aware of the requirements of Oregon law. The failure to properly educate its appraiser, review the appraisal, or both resulted in the clear inclusion in the appraisal of intangible value attributable to the PSA. The inclusion of that intangible value into the department's appraisal was contrary to Oregon law, and rendered that appraisal entirely without persuasive value.

Seeking to establish a value or defend the roll value of this property on the basis of including the value of intangible property is in direct conflict with ORS 307.030(2), and the department's claims and defenses on that basis were entirely without merit. An award of attorney fees on this basis would deter others from asserting meritless claims and defenses.

e.   Factor E

The fifth factor the court considers is "[t]he objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings." ORS 20.075(1)(e).

Taxpayer argues that the department was not diligent during the proceedings because the department did

not prepare an appraisal or credible valuation report for tax year 2013-14.

The department did prepare an appraisal for tax year 2012-13, and attempted to introduce trending evidence to demonstrate the value for 2013-14, but the court, on taxpayer's motion, excluded the department from introducing evidence as to tax year 2013-14 for failure to properly exchange that evidence.

Even though the department was excluded from presenting evidence as to tax year 2013-14, the court does not find on this basis that an award of attorney fees is appropriate. It was not unreasonable for the department to seriously pursue litigation for tax year 2012-13 based on its appraisal report in an attempt to demonstrate that taxpayer's appraiser's approach was erroneous, and then require taxpayer to sustain its burden of proof on tax year 2013-14.

The court also makes this finding cognizant of the fact that the property being valued in this case—except as to the land—was, in tax years 2012-13 and 2013-14, exempt from property taxation under an enterprise zone exemption. Accordingly, the department must be allowed some additional discretion in determining how many resources should be devoted to the defense of a property valuation case.

The court concludes that this factor is neutral, weighing neither in favor of nor against an award of attorney fees.

f.   Factor F

The sixth factor the court considers is "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute." ORS 20.075(1)(f).

Taxpayer argues that the department was unreasonable in its settlement negotiations for two reasons.

Taxpayer first argues that the department should have stipulated to a land value before trial. The record reflects that taxpayer's appraiser valued the land for tax year 2012-13 at $913,225. The department's appraiser valued the land for tax year 2012-13 at $899,000. Taxpayer

notes the difference was less than $15,000, which difference appears to be based on a rounding convention.

Taxpayer offered to stipulate to a land value of $899,000 for tax year 2012-13, and a land value of $913,225 for tax year 2013-14, on the basis that the department could not introduce valuation evidence for tax year 2013-14.

The department rejected the offer because it did not want to engage in piecemeal settlement negotiations, and because the land value evidence would be introduced in due course at trial with the appraisal reports.[13] Accordingly, the department informed taxpayer: "You can have your appraiser spend as little or as much time as you choose talking about that portion of his report."

The department's dismissiveness is worthy of at least some admonishment, especially when the department ultimately stipulated to the land value at trial, and the difference was minor.[14] However, the department makes a valid point, unrebutted by taxpayer, that the cost of determining the land value had already been incurred, and it was not apparent what amount of additional cost stemmed from the department's refusal to settle the land value.

Ultimately, given the small impact on the overall value of the property, the eventual stipulation at trial, and the failure to identify any significant cost associated with failure to reach settlement during the earlier communications, the court is not convinced that this fact, alone, supports an award of attorney fees under this factor.

Taxpayer next argues that the department should have agreed to settle the value of the property as a whole, particularly when the department was proscribed from introducing valuation evidence for tax year 2013-14.

---

[13] The county informed taxpayer that it and the department had "agreed not to separately negotiate land and improvement accounts," but also informed taxpayer that it was "welcome to continue negotiations with DOJ as you see fit."

[14] As the department stated in its response to taxpayer's request for attorney fees:

"The parties' appraisers were only 2% apart on their land values, so this was a non-issue—certainly not critical to trial preparation. Coincidentally, the stipulated [at trial] land value is only 2% of the total property value found by the court for 2012-13."

The department's position during settlement nego-tiations was that the property was worth $55,200,000 for tax year 2012-13.[15] As for tax year 2013-14, the settlement negotiations occurred *after* the court had granted taxpayer's motion *in limine* to exclude the department from introduc-ing valuation evidence for tax year 2013-14, and therefore the department was left defending the roll value of approxi-mately $58,500,000.

Taxpayer's position during settlement negotiations was that the property was worth $34,900,000 for tax year 2012-13,[16] and $19,100,000 for tax year 2013-14.

Taxpayer first offered settlement figures of $30,000,000 RMV for tax year 2012-13, and $24,000,000 for tax year 2013-14. The department countered with set-tlement figures of $50,000,000 RMV for tax year 2012-13, and $47,000,000 RMV for tax year 2013-14. Taxpayer rejected the department's counteroffer, and proposed a final settlement offer of $30,000,000 RMV for each tax year. The department did not respond to taxpayer's final settlement offer.

The department's defense may have suffered a major blow as to tax year 2013-14 by being prohibited from introducing valuation evidence as to that tax year, but the court does not find that the department's unwillingness to settle is objectively unreasonable.

Taxpayer argues it offered approximately $11 mil-lion more than its value opinion as to tax year 2013-14. That may be true, but the department countered with an offer approximately $9 million less than the roll value. In addition, it is notable that taxpayer offered approximately $5 million *less* than its value opinion as to tax year 2012-13 at the time of settlement discussions.

Numbers aside, a refusal to settle does not necessar-ily mean that a party acted in an objectively unreasonable manner. The evidence shows that the parties attempted to

---

[15] At trial, the department amended the value for tax year 2012-13 to $59,600,000.

[16] At trial, taxpayer amended its value for tax year 2012-13 to $38,200,000.

resolve the valuation portion of this dispute by settlement, but could not agree on a final number.

Moreover, the fact that the department did not settle as to tax year 2013-14, or in general, is not objectively unreasonable notwithstanding the fact that the department was proscribed from introducing valuation evidence as to tax year 2013-14. On the facts of this case, the department could reasonably proceed on the basis of using the tax year 2012-13 appraisal to demonstrate critical flaws in taxpayer's appraiser's analysis that might carry forward to tax year 2013-14.

It is worth recalling the standard at this time. The questions before the court as to this factor are whether the department was objectively unreasonable and whether the department diligently pursued settlement. On the record before the court, it appears the department engaged in settlement discussions, and, while perhaps some parties would have reached settlement, the court cannot say that the department's position during those discussions was objectively unreasonable.[17]

The court does not find that the department's rejection of taxpayer's settlement offers was objectively unreasonable, and therefore this factor is neutral, weighing neither in favor of nor against an award of attorney fees.

g.   Factor G

The seventh factor does not apply to this court. *See St. Mary Star of the Sea II v. Dept. of Rev.*, 22 OTR 496, 508-09 (2017).

h.   Factor H

The eighth and final factor the court considers is "[s]uch other factors as the court may consider appropriate under the circumstances of the case." ORS 20.075(1)(h).

---

[17] Compare this case with the settlement discussions in *Yu Contemporary, Inc. II v. Dept. of Rev.*, 22 OTR 511, 425-27 (2017). There, even though the taxpayer attempted numerous times to reach settlement with the county, and crafted its offers to address the specific concerns of the county, the county rejected each settlement offer with no counteroffer, opting instead to "have the court decide."

There are two additional considerations worthy of discussion in this case.

First, there are overtures in the department's briefing regarding the fact that this case concerned the RMV of taxpayer's property *as entered as a notation on the assessment roll, but not currently the basis for property taxation.* The relevance apparently being that the department should be given some amount of latitude for the veracity of its defense when the court considers an award of attorney fees.

This is an interesting point. As an initial matter, by making a determination in its jurisdictional order that taxpayer must appeal the RMV in the current tax year or forever forfeit its valuation claims, the court set the stage for the importance of this litigation. Accordingly, it could be seen as contradictory for the court to now conclude that the department does not need to seriously engage in litigation with taxpayer.

However, given the budgetary considerations of the department, and the looming question regarding whether taxpayer's property would ever be disqualified from exemption, the court cannot say that the department must engage in full-bore litigation in order to avoid an award of attorney fees. In some cases, it may indeed be appropriate for the department to depend upon taxpayer carrying its burden of proof.

The problem in this case is that key valuation positions of the department were objectively unreasonable. To that end, the court does not and cannot consider any budgetary considerations of the department or the current exemption status of the property. To the extent that the department defends the roll value against a taxpayer's valuation assertion, the department must do so in good faith and with objectively reasonable arguments.

The second consideration of the court is based on an observation contained in a footnote in the department's objection to taxpayer's fee request. That observation is as follows:

"We are aware of no legislative history [pertaining to ORS 305.490(4)(a)] indicating that the legislature intended

attorney fees to be awarded where the property is exempt from taxation. Certainly if qualification for or disqualification from an exemption is litigated fees are contemplated, but not where taxes are not at issue."

Unpacking this observation, it appears that in the first sentence, the department engages in some form of legislative history analysis of ORS 305.490(4)(a). It appears that in the second sentence the department is engaging in a textual analysis of the language contained in ORS 305.490(4)(a). There are two problems with this observation.

First, the department fails to mention whether the context of ORS 305.490 or other statutes in the tax or civil laws might support or contravene its observation or analysis. *See State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009) (statutory interpretation requires consideration of the text, context, and legislative history). Accordingly, The department's observation is not even a complete analysis, and the court is not obliged to complete it. *Cf. Beall Transport Equip. Co. v. Southern Pacific*, 186 Or App 696, 700-01 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) (noting generally that "it is not this court's function to speculate as to what a party's argument might be" or "to make or develop a party's argument when that party has not endeavored to do so itself").

If the department wished to argue that the legislature's silence as to the exact situation in this case is reason to deny taxpayer's fee request, the court expects the department would have done so with complete briefing, and above the line. Absent full briefing on the issue, the court is comfortable concluding that this case is generally within the provisions of ORS 305.490(4)(a), which provides for attorney fees in property tax matters.

Second, the court concluded in its jurisdictional order that taxpayer is aggrieved by the department's appraisal. Accordingly, to the extent that the department is still attempting to argue that the valuation of the property for the tax years at issue in this case is not a legitimate issue, that argument has been rejected by the court. This case arises generally within the realm of property taxation, and taxpayer is entitled to request attorney fees as the prevailing party.

These other factors are neutral, weighing neither in favor of nor against an award of attorney fees in this case.

i.   Conclusion as to Attorney Fees

The only factor that weighs against an award of attorney fees is factor C, and only to the extent that the court might award fees incurred in responding to the department's jurisdictional arguments raised in its motion to dismiss. Factors B, C, and D weigh in favor of an award of attorney fees, at least as to the department's valuation arguments, claims, and defenses. The remaining factors are neutral in their application.

The court's rules provide that it may "deny or award in whole or in part the amounts sought as attorney fees." TCR 68 C(2)(f)(ii). In addition, the Oregon Court of Appeals has stated that a court may "exercise its discretion to limit—or perhaps even deny—fees for a particular stage of litigation depending on the conduct of the parties and counsel and the other factors listed in ORS 20.075(1) and (2)." *Goodsell v. Eagle-Air Estates Homeowners Ass'n*, 280 Or App 593, 605, 383 P3d 365 (2016).

In this case, the jurisdictional arguments were resolved by order after a hearing on the department's motion to dismiss early in the case. The valuation arguments were resolved by opinion after trial. Those are separate stages of litigation, and involved separate issues. In addition, for purposes of defending against taxpayer's valuation claims, this case did not become "live" until the court ruled on the department's jurisdictional defense.

For these reasons and on the basis of the factors analyzed above, the court in its discretion denies taxpayer's request for fees with respect to those amounts incurred in responding to the jurisdictional issues raised in the department's motion to dismiss. Otherwise, the court concludes that taxpayer is entitled to attorney fees for the valuation issues in this case, and other ancillary work necessary to achieve a judgment in its favor, but not for litigating the jurisdictional issues raised in the department's motion to dismiss.

2.   *Amount of Fees*

Having concluded that taxpayer is entitled to an award of attorney fees, the court now considers the amount of fees requested. The department argues that the amount of fees requested by taxpayer is excessive in both time billed and billing rate, as well as in relation to the amount of benefit actually received from the judgment in this case.

In evaluating the amount of fees requested, the court considers the factors discussed above, as well as several additional factors found in ORS 20.075(2). With due consideration to the factors previously discussed, and the fact that the court has already disallowed a portion of taxpayer's requested fees, the factors contained in ORS 20.075(2) are discussed below.

a.   Factor A

The first factor the court considers is "[t]he time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services." ORS 20.075(2)(a).

Under this factor, taxpayer argued:

"The valuation of the co-generation facility required the attorneys to become well-versed in the energy market to correctly evaluate the multiple variables impacting what a co-generation property could receive on the market as of the assessment dates. This required locating and working with experts in the field and substantial research into the energy markets. The case also involved understanding the different types of co-generation facilities to differentiate costs of construction and operation of facilities."

The department does not appear to dispute this. Indeed, the department indicated elsewhere in its objection that the trial "raised questions of first impression * * * involving the valuation of a cogeneration facility."

The court considers the novelty of the valuation issue in this case, as well as the time and labor required to understand the varying factors affecting the valuation of the property in order to make a cogent presentation to the court at trial. On that basis, the court does not find a

sufficient reason to reduce the amount of fees requested by taxpayer.

### b.  Factor B

The second factor the court considers is "[t]he likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases." ORS 20.075(2)(b).

Taxpayer argues that its counsel would have pursued other work if it had not undertaken this particular case. However, the court only considers that fact if it is "apparent to the client." ORS 20.075(2)(b). Taxpayer has introduced no evidence and made no argument on this point, and the court will not engage in conjecture.

### c.  Factor C

The third factor the court considers is "[t]he fee customarily charged in the locality for similar legal services." ORS 20.075(2)(c).

The department has specifically objected to the hourly billing rates of upwards of $540, $475, and $320 for attorneys David Canary, Cynthia Fraser, and Michael Mangan, respectively, but has produced no evidence of the rates customarily charged in the locality for similar legal services for the years of 2012, 2013, 2014, 2015, or 2016. However, neither has taxpayer.

Taxpayer has indicated that David Canary has litigated property tax cases for over 30 years. Cynthia Fraser has reportedly litigated property tax cases since 2005, but has litigated condemnation cases since 1991. Accordingly, Fraser has been a litigator for more than 20 but less than 30 years. Taxpayer has not provided any detail on the litigation experience of Michael Mangan, other than identifying him as a senior associate. The court will nevertheless take judicial notice that he was admitted to the Oregon State Bar in late 2009.

Taxpayer argues that the litigation experience and skill of its attorneys justified the rates charged in this case, but has provided no evidence that ties that experience and skill to the rates generally found in the legal market. Nor

has the department introduced any evidence of the local rates charged by attorneys. Moreover, neither party has requested a hearing on the matter during which evidence might have been introduced.

At least one court has considered the Oregon State Bar (OSB) Economic Survey to determine whether the billing rates charged were reasonable. *See Precision Seed Cleaners v. Country Mut Ins Co*, 976 F Supp 2d 1228, 1244 (D Or 2013) (applying ORS 20.075); *cf. Blum v. Stenson*, 465 US 886, 895, 104 S Ct 1541, 79 L Ed 2d 891 (1984) (considering reasonable billing rates under 42 USC 1983(b)).[18] The court considers it within its discretion to take notice of and consider the OSB Economic Survey information in this case to the extent that it is relevant and helpful to ascertain a reasonable hourly billing rate under this factor.

The OSB Economic Survey reports on the hourly rates charged by attorneys generally as well as within specific subsections of the bar. Those reports are expressed by way of benchmarks for the average, median, 25th percentile, 75th percentile, and 95th percentile billing rates. The reports also indicate the highest billing rates reported.

There are two OSB Economic Surveys that are of interest to the court for this case, the 2012 survey and the 2017 survey.[19] Before considering the results of those surveys, the court considers which metrics will be helpful to the court in determining a reasonable billing rate.

In each survey, the bar reports hourly rate benchmarks for attorneys in private practice in specific geographic areas for (1) attorneys generally, (2) attorneys based on years admitted to practice, and (3) attorneys based on area of practice. Although the court will consider benchmarks (1)

---

[18] In *Precision Seed Cleaners*, the district court had received evidence in the form of affidavits or declarations regarding reasonable billing rates, but the district court nonetheless reviewed the OSB Economic Surveys in its analysis. 976 F Supp 2d at 1243-44. In this case, neither party introduced affidavits or declarations. The court does not consider it inappropriate to consider the OSB Economic Surveys.

[19] No survey was produced for years 2013, 2014, 2015, or 2016. The 2012 survey contains information regarding the billing practices for 2011. Likewise, the 2017 survey contains information regarding the billing practices for 2016.

and (3), the court concludes that benchmark (2) is the most relevant to this case.

The court reaches that conclusion based on a finding that this case, being a highly technical valuation case, is the type of case requiring a seasoned and experienced attorney. In that sense, "similar legal services" for purposes of ORS 20.075(2)(c) are services requiring seasoned attorneys. It would be reasonable for a taxpayer to seek out not just a tax attorney, but a tax attorney with a certain number of years of experience in these matters and generally.

With that introduction, the court reproduces certain portions of the OSB Economic Surveys for 2012 and 2017, which contain billing information for years 2011 and 2016, below.[20]

### Hourly Billing Rates Generally for Portland-Area Attorneys

| Benchmark \ Year | 2011 | 2016 |
|---|---|---|
| Average | $284 | $324 |
| Median | $275 | $300 |
| 75th Percentile | $350 | $400 |
| 95th Percentile | $450 | $525 |
| High | $675 | $850 |

### Hourly Billing Rates Generally for Portland-Area Attorneys Practicing Tax Law or Estate Planning

| Benchmark \ Year | 2011 | 2016 |
|---|---|---|
| Average | $281 | $357 |
| Median | $275 | $340 |
| 75th Percentile | $328 | $455 |
| 95th Percentile | $441 | $625 |

---

[20] The 2012 and 2017 OSB Economic Surveys are available at https://www.osbar.org/surveys_research/snrtoc.html#economicsurveys.

Hourly Billing Rates for Portland-Area
Attorneys with 4-6 Years of Experience

| Benchmark \ Year | 2011 | 2016 |
|---|---|---|
| Average | $210 | $249 |
| Median | $218 | $250 |
| 75th Percentile | $250 | $300 |
| 95th Percentile | $295 | $350 |

Hourly Billing Rates for Portland-Area
Attorneys with 7-9 Years of Experience

| Benchmark \ Year | 2011 | 2016 |
|---|---|---|
| Average | $258 | $282 |
| Median | $250 | $280 |
| 75th Percentile | $295 | $340 |
| 95th Percentile | $375 | $400 |

Hourly Billing Rates for Portland-Area
Attorneys with 21-30 Years of Experience

| Benchmark \ Year | 2011 | 2016 |
|---|---|---|
| Average | $326 | $394 |
| Median | $333 | $415 |
| 75th Percentile | $399 | $475 |
| 95th Percentile | $470 | $525 |

Hourly Billing Rates for Portland-Area
Attorneys with Over 30 Years of Experience

| Benchmark \ Year | 2011 | 2016 |
|---|---|---|
| Average | $340 | $413 |
| Median | $350 | $425 |
| 75th Percentile | $400 | $495 |
| 95th Percentile | $500 | $610 |

Those rates must then be compared with the actual billing rates charged to and requested by taxpayer.

The billing entries submitted by taxpayer's counsel span four years from 2012 to 2016. Those entries show the following billings rates for each attorney for each year.

Hourly Billing Rates for Each Attorney by Year

| Attorney\Yr | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|
| Canary | $495/hr | $495/hr | $495/hr | $520/hr | $540/hr |
| Fraser | $395/hr | $395/hr | $395/hr & $435/hr | $455/hr | $475/hr |
| Mangan | N/a | N/a | N/a | $305/hr | $320/hr |

Taxpayer has represented that David Canary has litigated tax matters for over 30 years, and the department has not challenged that assertion. Accordingly, for purposes of considering the reasonableness of his billing rate, the court will assume that his experience was in excess of 30 years for each of the relevant billing periods, and consider the corresponding survey information.

Cynthia Fraser has for each relevant billing period, as explained above, litigated cases for more than 20 years but less than 30 years.[21] Accordingly, for purposes of considering the reasonableness of her billing rate, the court will consider the survey information corresponding with her years of experience.

Michael Mangan presents a bit of a challenge to the court. Without any evidence to show otherwise, the court cannot assume that he was admitted to any other bar before his entrance into the Oregon bar, and so therefore the court cannot assume that he has practiced law any earlier than 2009. His first billing entry is in 2015, when he would have 6 years of experience. That would place him within the 4-6 years of experience range for 2015, but the 7-9 years of experience range for 2016. The court will consider the appropriate survey information corresponding with his years of experience in each year.

The court will discuss the reasonableness of the rates requested for each attorney separately.

---

[21] Because she began practicing in 1991, Ms. Fraser would have reached her 21st year of practice in 2012.

(1)   David Canary

For years 2012, 2013, and 2014, Canary's hourly billing rate was $495 per hour. That rate is commensurate with the 95th percentile in 2011, and the 75th percentile in 2016, based on his years of experience. It exceeds the 95th percentile for attorneys generally in 2011, but does not exceed the 95th percentile for attorneys generally in 2016. The same can be said for the rates of attorneys practicing tax law and estate planning.

Taxpayer has represented to the court that Canary has been "active in legislation of the rules and statutes relating to the tax court and tax laws," and that he is recognized both locally and nationally. On the basis of Canary's unique expertise and other attributes, the court concludes that paying a higher than average billing rate, even near the top of the range for an attorney with Canary's years of experience, is not unreasonable. A client could reasonably conclude that Canary would bring more than just years of experience to the litigation in this case.

In reviewing the billing rates for each year, the court considers that billing rates increased between 2011 and 2016, but with no indication as to when those increases took place. The court also takes into account the temporal proximity between the years at issue and the survey years.[22] Nevertheless, the court concludes that the requested billing rate of $495 for Canary was reasonable for years 2012, 2013, and 2014.

For 2015, Canary's hourly billing rate was $520. That rate exceeds the 95th percentile in 2011 but is only moderately above the 75th percentile in 2016, based on Canary's years of experience. That rate exceeds the 95th percentile for attorneys generally in 2011, and is commensurate with the 95th percentile for attorneys generally in 2016. It exceeds the 95th percentile for tax attorneys in 2011 but not for 2016.

---

[22] For example, the 2011 survey data is more relevant to the billing rates for 2012 than the 2016 survey data.

The same considerations that apply to years 2012, 2013, and 2014 apply to 2015. In addition, the court places primary emphasis on the 2016 rates because of the temporal proximity to 2015. The court concludes that Canary's rate for 2015 was reasonable.

For 2016, Canary's hourly billing rate was $540. That rate is almost halfway between the 75th and 95th percentiles for 2016. It moderately exceeds the 95th percentile for attorneys generally in 2016, and is precisely halfway between the 75th and 95th percentiles for tax lawyers in 2016.

The court affords almost no weight to the 2012 survey data, instead relying upon the 2017 survey data. The court concludes, based on the same considerations discussed above, that Canary's hourly billing rate for 2016 was reasonable.

In summary, the court concludes that no adjustment to David Canary's billings rates is necessary.

(2)   Cynthia Fraser

For years 2012 and 2013, Cynthia Fraser's hourly billing rate was $395. That rate was commensurate with the 75th percentile rate for 2011 and the average rate for 2016, based on her years of experience. It was between the 75th and 95th percentiles in 2011 for attorneys generally and attorneys practicing tax law.

Taxpayer has represented to the court that Fraser "has been recognized by her peers as a pre-eminent attorney in several rankings" and "is a member of the Oregon State Bar Tax Section Executive Board." In addition, she has prior successful experience with large industrial property tax cases. On that basis, the court concludes that paying a higher than average billing rate for Fraser's services is not unreasonable.

The court places primary emphasis on the 2011 rates for the 2012 billing rate because of the temporal proximity to 2012. The court considers both the 2011 and the 2016 rates for the 2013 billing rate, but places more emphasis on the 2011 billing rates given its temporal proximity.

The court concludes that Fraser's billing rate for 2012 and 2013 was reasonable.

In 2014, Fraser's hourly billing rate began the year at $395, but thereafter increased to $435. For the same reasons as years 2012 and 2013, the court concludes that Fraser's billing rate of $395 is reasonable.[23] Therefore, the court needs only to consider the billing rate of $435.

The increased rate is about halfway between the 75th and 95th percentiles for 2011, and moderately about the median for 2016, based on her years of experience. It is near the 95th percentile for attorneys generally in 2011, but is moderately above the 75th percentile for attorneys generally in 2016. With respect to rates for tax attorneys, Fraser's rate is near the 95th percentile for 2011, but is less than the 75th percentile for 2016.

The court considers both the 2011 and the 2016 rates for the 2014 billing rate, but places more emphasis on the 2016 billing rates given its temporal proximity. Based upon the considerations above, the court considers Fraser's billing rates for 2014 to be reasonable.

For 2015, Fraser's hourly billing rate was $455. That rate is near the 95th percentile for 2011 but is less than the 75th percentile for 2016, based upon her years of experience. It is commensurate with the 95th percentile for attorneys generally in 2011, but a little less than halfway between the 75th and 95th percentiles for attorneys generally in 2016. It exceeds the 95th percentile for tax attorneys in 2011, but is equal to the 75th percentile for tax attorneys in 2016.

The court places primary emphasis on the 2016 rates because of the temporal proximity to 2015. Based upon the considerations above, the court considers Fraser's billing rate for 2015 to be reasonable.

For 2016, Fraser's hourly billing rate was $475. That rate equals the 75th percentile, based on her years of

---

[23] To the extent that the analysis changes slightly because it is a year later, that fact would only support a higher billing rate. The difference between the 2011 and 2016 data shows an upward shift in billing rates.

experience. It is a bit more than halfway between the 75th and 95th percentiles for attorneys generally, and moderately above the 75th percentile for tax attorneys.

The court affords almost no weight to the 2012 survey data, instead relying upon the 2017 survey data. Based upon the considerations above, the court considers Fraser's billing rate for 2016 to be reasonable.

In summary, the court concludes that no adjustment to Cynthia Fraser's billings rates is necessary.

(3)   Michael Mangan

For 2015, Michael Mangan's hourly billing rate was $305. In 2015, as previously explained, Mangan had six years of experience. Accordingly, his hourly billing rate exceeded the 95th percentile in 2011, and was commensurate with the 75th percentile in 2016, based upon his years of experience at the time. His rate was between the median and the 75th percentile for attorneys generally in 2011, and commensurate with the median for attorneys generally in 2016. For tax attorneys, his rate was between the median and the 75th percentile in 2011, and less than the average and the median for 2016.

Taxpayer has represented that Mangan was a former appraiser, and accordingly his time was valuable to the litigation in this court. On that basis, the court concludes that paying a slightly higher than average billing rate for Mangan's services is not unreasonable.

The court places primary emphasis on the 2016 rates because of the temporal proximity to 2015. In addition to the considerations just discussed, the court also considers that for 2015 Mangan would be at the top of the relatively short experiential range for the 2016 rates, and therefore a reasonable rate for his services would naturally skew toward the higher end of the range. On those bases, the court concludes that Mangan's hourly billing rate for 2015 was reasonable.

For 2016, Mangan's hourly billing rate was $320. That rate is between the median and the 75th percentile for 2016, based on Mangan's years of experience at the time. It

is also moderately above the median for attorneys generally and moderately below the median for tax attorneys in 2016.

The court affords almost no weight to the 2011 survey data, instead relying upon the 2016 survey data. Based on the considerations above, the court concludes that Michael Mangan's hourly billing rate is reasonable.

(4)   Summary

Based on the foregoing, the court concludes that the rates requested by taxpayer are reasonable.

d.   Factor D

The fourth factor the court considers is "[t]he amount involved in the controversy and the results obtained." ORS 20.075(2)(d).

In order to properly evaluate this factor, the court must consider the appropriate amount that was involved in the controversy. The department argues that the amount to be considered is only the reduction of taxes applicable to the reduced land value, which was approximately $35,000 in total for the two tax years.

Taxpayer argues that the amount to be considered should, in addition to the savings on the land value, include the savings it might receive in a related challenge to the public benefit contribution payment, which payment is based upon the RMV of the property. That amount is purported to be approximately $563,031. Taxpayer also argues that the value determined for tax year 2013-14 by the court is an adjudicated value that will extend for the next five years, subject to normal adjustments, which will save taxpayer an estimated $1,210,000 in taxes.[24]

The court cannot accept the department's view of the benefit conferred in this case. As noted by taxpayer, the department's arguments are simply another formulation of its jurisdictional arguments, *i.e.*, that taxpayer has no standing to be in this court.

---

[24]  Defendant argues that value determined for tax year 2013-14 cannot be an adjudicated value because, except for the land value, the property was exempted from property taxation. The court makes no determination on this matter.

In that regard, having previously determined that the court does have jurisdiction to consider the matter, the court cannot now conclude that taxpayer did not receive any benefit by successfully challenging the assessment values determined by the department and notated on the assessment roll. To do so would be contradictory to the holding in the jurisdictional order.

Taxpayer notes that its tax liability, assuming it lost its tax exemption and the claw-back provisions of ORS 285C.240(3)(a) were implicated, would be $648,589 for tax year 2012-13, and $641,985 for tax year 2013-14.[25] Although these numbers were noted in taxpayer's reply, The department did not object to them in its response to taxpayer's reply.[26] The court concludes that these numbers must be taken into account when considering the total amount of fees requested.

On that basis, in addition to the savings gained on the land value, the court concludes that no reduction in attorney fees is necessary, and it does not exercise its discretion to do so. In making this conclusion, the court does not rely on taxpayer's adjudicated value argument, or its reference to the amounts purported to be saved under the public benefit contribution.[27]

e.   Factor E

The fifth factor the court considers is "[t]he time limitations imposed by the client or the circumstances of the case." ORS 20.075(2)(e).

Taxpayer has introduced no evidence and made no argument under this factor.

f.   Factor F

The sixth factor the court considers is "[t]he nature and length of the attorney's professional relationship with the client." ORS 20.075(2)(f).

---

[25] *See Seneca*, 21 OTR at 369-70.

[26] Defendant's response focused on Plaintiff's adjudicated value argument, which argument the court does not consider.

[27] The court makes no determination on whether consideration of such amounts is appropriate. Rather, the court concludes it does not need to reach those amounts in this case.

Taxpayer has introduced no evidence and made no argument under this factor.

g.    Factor G

The seventh factor the court considers is "[t]he experience, reputation and ability of the attorney performing the services." ORS 20.075(2)(g).

This factor was considered in part in the analysis under factor C in determining the appropriate billing rate of the attorneys. No further adjustment is warranted under this factor.

h.    Factor H

The eighth factor the court considers is "[w]hether the fee of the attorney is fixed or contingent." ORS 20.075 (2)(h).

The fees in this matter were charged at a fixed hourly rate. Taxpayer represented to the court in its request for attorney fees that, had the fee arrangement been on a contingent basis, the amount of fees charged would have been higher. Taxpayer did not provide any evidence to support this statement, and the department did not introduce any evidence to rebut this statement.

The court makes no determination or adjustment under this factor.

i.    Conclusion as to Amount of Fees

The court grants taxpayer's request for attorney fees. Taxpayer also requested an amount for fees incurred for requesting attorney fees, which amount would be submitted by supplemental statement after the court issues this order. The court is authorized to award so-called "fees on fees," *TriMet v. Aizawa*, 362 Or 1, 403 P3d 753 (2017), and at least preliminarily does so here.

However, because taxpayer has not already filed its statement quantifying the supplemental amount of attorney fees requested, neither the department nor the court has had an opportunity to consider the supplemental amount of attorney fees requested. The court grants taxpayer's supplemental request for attorney fees, subject to the department

being afforded the time allowed by the court's rules to object to the amount of such supplemental request.

## V.   CONCLUSION

Taxpayer's requests for costs and disbursements and reasonable expenses are granted. Taxpayer's request for attorney fees is denied with respect to any fees related to defending against the department's motion to dismiss. Taxpayer's request for supplemental attorney fees is granted, subject to an opportunity for the department to object to the amount of supplemental fees requested. Taxpayer's request for attorney fees is otherwise granted. Now, therefore,

IT IS ORDERED that Plaintiff's request for costs and disbursements is granted.

IT IS FURTHER ORDERED that Plaintiff's request for reasonable expenses is granted.

IT IS FURTHER ORDERED that Plaintiff's request for attorney fees is granted in part and denied in part; and

IT IS FURTHER ORDERED that Plaintiff is directed to prepare an appropriate form of judgment. The parties are encouraged to confer as to the separation of amounts between litigating the jurisdictional issues in this case and the remainder of the attorney fees, costs and disbursements, and reasonable expenses requested by Plaintiff.