No. 24 December 10, 2019 543

IN THE OREGON TAX COURT
REGULAR DIVISION

John T. HOGGARD
and Mary T. Burry,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

(TC 5336)

Following the court's order in *Hoggard I v. Dept. of Rev.*, 23 OTR 406 (2019) (*Hoggard I*), Plaintiffs submitted a request for attorney fees, costs and disbursements. After reviewing the factors enumerated in ORS 20.075, the court determined that Plaintiffs were entitled to attorney fees, costs, and disbursements because the county assessor's legal position was objectively unreasonable and an award of fees in this case would deter assessors from asserting similar positions in the future. The court agreed with Defendant that any award of fees should be capped at amounts attributable to the timeliness issue in *Hoggard I*, except that the court also awarded to Plaintiffs reimbursement for the fees incurred by Plaintiffs' counsel in requesting the fee award. The court also awarded costs and disbursements to Plaintiff for charges related to requesting and obtaining public records. However, the court rejected Plaintiffs' request for fees for "post-judgment proceedings."

Submitted on Plaintiffs' Request for Award of Attorney Fees, Costs, and Disbursements.

Jason A. Wright and Melina Martinez, Richardson Wright LLP, Portland, filed the request for Plaintiff.

Daniel Paul, Senior Assistant Attorney General, Department of Justice, Salem, filed the response for Defendant.

Decision rendered for Plaintiff December 10, 2019.

**ROBERT T. MANICKE, Judge.**

This opinion should be read in conjunction with this court's order dated June 7, 2019 (the June 7 Order); the facts recited below supplement those in the June 7 Order. Following judgment entered June 26, 2019, Plaintiffs (taxpayers) have filed a statement of attorney fees under ORS

305.490(4)[1] and ORS 20.105. Taxpayers seek: (1) $29,956.50 in fees incurred to date; (2) costs and disbursements of $768.25; and (3) an additional $3,600 in anticipated fees that taxpayers estimate they will incur in "post-judgment proceedings." Defendant Department of Revenue (the department) argues that no fees or costs are warranted, and that in any event the attorney fee statutes "cap" the amount of any award.

## I.   BACKGROUND

Taxpayers initially appealed to the Magistrate Division from a "Notice of Omitted Property" that the Clackamas County Assessor mailed to them on June 29, 2017. That notice informed taxpayers that any appeal must be filed by October 17, 2017, but taxpayers appealed on December 19, 2017, which was within 90 days after they received their annual property tax bill. The assessor defended the accuracy of the October 17 deadline before the magistrate and maintained that position in a motion to dismiss even after (1) the assessor's counsel cautioned that the notice procedure on which the deadline was based was "vulnerable to a challenge"; and (2) the department informed the assessor unambiguously that the assessor's notice procedure was inconsistent with the statute and failed to trigger any appeal deadline. Before the magistrate ruled on the assessor's motion to dismiss, Taxpayers conceded that their appeal was untimely and sought relief under an alternative statute that required them to prove "good and sufficient cause" for having filed late. Even after taxpayers publicly revealed substantial personal information about health and family problems in an effort to prove good and sufficient cause, the assessor did not concede that the June 29, 2017, notice was ineffective and that there was no October 17 deadline. The magistrate dismissed taxpayers' case for two reasons: because taxpayers had conceded that their complaint was untimely, and because they failed to show "good and sufficient cause" for late-filing relief under ORS 305.288(5).

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

Taxpayers represented themselves in the Magistrate Division but hired counsel to appeal to the Regular Division. In this division, taxpayers alleged that their complaint in the Magistrate Division was timely, and they also challenged the addition of omitted property on the merits. The department's answer in this division admitted that taxpayers had filed their Magistrate Division complaint timely. The parties undertook factual investigations and negotiations over the underlying omitted property dispute but failed to resolve it. The assessor then withdrew the omitted property assessment, subject to the possibility of issuing a new notice at some future date. Taxpayers filed a motion that the court treated as a motion for summary judgment, and the department resisted on the grounds that the case was moot because (1) the department had admitted that the Magistrate Division complaint was timely, and (2) the assessor had withdrawn the assessment. The court's June 7 Order expressly "found in favor" of taxpayers that their Magistrate Division complaint had been timely, but the order did not reach the merits of the omitted property dispute.

## II.   ISSUES

(1)   Is any fee award limited to the amount related to the timeliness of taxpayers' appeal to the Magistrate Division?

(2)   Should the court award fees attributable to timeliness?

(3)   What amount of fees is appropriate?

(4)   May costs and expenses include the public records charge that Clackamas County imposed on taxpayers to obtain internal emails?

(5)   May a fee award include taxpayers' claim for "post-judgment proceedings"?

## III.   ANALYSIS

A.   *Fees are "capped" at amounts attributable to timeliness issue.*

The department asserts that, because it admitted in its answer in the Regular Division that taxpayers'

complaint in the Magistrate Division was timely, any fee award is "capped" at $5,877.50, which is the amount taxpayers claim to have incurred through the date on which taxpayers' counsel reviewed the department's answer. The department thus asserts that fees attributable to the underlying dispute over potential omitted property are not eligible for an award because the court has not "found in favor" of taxpayers, nor are they "prevailing" parties with respect to that issue. (Citing *Comcast Corp. V v. Dept. of Rev.*, 23 OTR 8 (2018).)

The court agrees in principle with the department's analysis that a cap applies. Taxpayers' fee statement shows extensive services related to obtaining facts about whether any omitted property exists and the value of any work on the property, hosting a site inspection, and settlement negotiations. The court's June 7 Order expressly left a ruling on the underlying omitted property issue for another day, should the county assessor issue a new notice that taxpayers choose to contest.

B.    *Whether to Award Fees Attributable to Timeliness?*

The court now applies the standards governing ORS 305.490(4)(a)[2] to determine whether to award fees through October 3, 2018, when taxpayers' counsel reviewed the department's answer. ORS 305.490(4)(a) provides:

> "If, in any proceeding before the tax court judge involving ad valorem property taxation, exemptions, special assessments or omitted property, the court finds in favor of the taxpayer, the court may allow the taxpayer, in addition to costs and disbursements, the following:
>
> "(A)    Reasonable attorney fees for the proceeding under this subsection and for the prior proceeding in the matter, if any, before the magistrate; and

---

[2] The court's authority under ORS 305.490(4) is discretionary, while ORS 20.105 requires a fee award in favor of a "prevailing party" if the court finds that there was "no objectively reasonable basis" for a party's position. As applied to this case, however, ORS 20.105 appears to provide no greater prospect of relief to taxpayers than would be available under ORS 305.490(4), as the court must apply the factors in ORS 20.075 regardless. *See McKee v. Dept. of Rev.*, 18 OTR 58, 65 (2004) ("The rights under ORS 20.105 do not appear to exceed those under ORS 305.490.").

"(B)   Reasonable expenses as determined by the court. Expenses include fees of experts incurred by the individual taxpayer in preparing for and conducting the proceeding before the tax court judge and the prior proceeding in the matter, if any, before the magistrate."

The court notes that, although the conduct that caused the court to find in favor of taxpayers regarding dismissal of their complaint in the Magistrate Division involved the Clackamas County Assessor, the legislature has decided that it is the department that must pay any fees, consistent with the department's supervisory authority. *See* ORS 305.490 (4)(b) ("Payment of attorney fees or reasonable expenses under this subsection shall be made by the Department of Revenue * * *."); ORS 306.115(1) (department to exercise "supervision and control" over property tax system of the state).

The court considers the factors in ORS 20.075(1) when deciding whether to award fees, and, if so, the factors in ORS 20.075(2) to determine the amount. *See Seneca Sustainable Energy, LLC III v. Dept. of Rev.,* 23 OTR 22, 28 (2018). The assessor's persistence in asserting that taxpayers' complaint in the Magistrate Division was untimely raises questions primarily under the factors in paragraphs (a) and (b) of ORS 20.075(1) (parties' conduct and objective reasonableness of their positions). No later than the initial case management conference on February 1, 2018, the current assessor's predecessor first had reason to doubt his position, based on a written report from the employee who participated in that hearing, which concluded: "The Magistrate seemed fairly certain that 2 separate notices are required." Within a few days, on February 6, 2018, the assessor's attorney described the assessor's position as "vulnerable"[3] and recommended changing the notice procedure prospectively in a manner consistent with the department's longstanding rule. Some three months later, the assessor's office asked the department about the notice procedure by email dated

---

[3] The attorney's advice states that the assessor is "vulnerable to a challenge to the sufficiency of our process *in a timely-filed complaint*," apparently in the belief that taxpayers' complaint was untimely despite any error in the assessor's procedures. (Emphasis added.) The advice does not, however, indicate how the complaint could have been untimely if, as the department's later communications indicated, the assessor's flawed notice procedure failed to trigger any deadline for appeal.

April 9, 2018. The department responded five weeks after that, by email dated May 17, 2018, plainly stating that a correction of the tax roll due to the discovery of omitted property "is not considered complete until the taxpayer is given the 2nd notice (OAR 150-311-0220)." At this point, the assessor had effectively been told by her supervising state agency that the October 17, 2017, appeal deadline stated in the notice her predecessor had sent to taxpayers was wrong; because the assessor's predecessor had failed to send two notices, no appeal deadline had ever arisen.[4] Nearly two months remained before the magistrate issued his final decision of dismissal on July 12, 2018. The assessor had the opportunity to withdraw her motion to dismiss and to issue new notices in compliance with ORS 311.223(2) and the department's instructions, but she did not do so. Instead, the assessor observed taxpayers seeking to prove reasonable cause for what they thought was a failure to file timely, a failure that the department had told her was not real. As part of their effort, taxpayers put detailed personal information about their health conditions and those of family members into the public record. However, the assessor did not come forward to acknowledge her error. At this point, there was a chance that the assessor's error would become moot, either because taxpayers might succeed in proving reasonable cause and move on to the merits of the omitted property/value dispute, or because taxpayers might fail to prove reasonable cause and simply give up. Taxpayers did fail to prove reasonable cause, but they did not give up. They appealed instead to this division, and only after that appeal commenced did any of the facts about the assessor's knowledge of her erroneous deadline come to light. With respect to the first factor in ORS 20.075(1), the court stops short of determining that the assessor's conduct was "reckless, willful, malicious, in bad faith or illegal," mindful of the relatively spare record in this case. However, the court finds the assessor's conduct disturbing and likely to erode the public confidence that all taxing authorities need in order to do their job effectively. With respect to the second factor,

---

[4] As explained in the June 7 Order, the department does not contest that a 90-day window for appeal began to run on October 10, 2017, when the assessor mailed the annual tax statement to taxpayers; taxpayers filed within that window.

the court finds that the assessor's defense of untimeliness became objectively unreasonable no later than the date of the department's email advice to the assessor.

With respect to the third and fourth factors in ORS 20.075(1) (deterrence), the court concludes that an attorney fee award would likely reinforce the existing case law by reminding parties that even a position that initially seems sound can become objectively unreasonable due to events that occur after litigation has started. *See, e.g.*, *Dimeo v. Gesik*, 197 Or App 560, 562, 106 P3d 697 (2005) ("[A] party has a continuing duty to evaluate its position throughout the course of litigation. It is possible that a claim that was objectively reasonable when asserted may become unreasonable when viewed in light of additional evidence or changes in the law."); *Patton II v. Dept. of Rev.*, 18 OTR 256, 259 (2005). Conversely, the court finds it unlikely that a fee award would chill an assessor, or any party, from asserting or maintaining a reasonable claim or defense. Regarding the fifth and sixth factors (objective reasonableness of the parties during the litigation and in pursuing settlement), the court is not aware of any evidence that taxpayers, the assessor, or the department behaved unreasonably during the period leading up to the department's answer in this division, except for the assessor's maintenance of an objectively unreasonable position as discussed above. The seventh factor (a prevailing party fee under ORS 20.190) is inapplicable here. Overall, the first four factors weigh strongly in favor of an attorney fee award, and the last three factors are neutral.

Before moving to the amount of taxpayers' request for fees, the court pauses to consider the department's argument that "plaintiffs bear some responsibility for the outcome in the Magistrate Division" because they admitted their complaint was untimely. The department cites ORS 20.075(1)(h), the "catch-all" factor that the court may examine in order to decide whether to award fees. This argument is not well taken. The court finds it significant that taxpayers did not voluntarily dismiss their *appeal* in the Magistrate Division; rather, they ceased to pursue one of two avenues for that appeal. The normal avenue to appeal requires a taxpayer to file a complaint in the Magistrate Division within 90 days after the roll has been corrected. ORS 311.223(4).

The assessor's June 29, 2017, notice stated on its face that that deadline was October 17, 2017. The assessor insisted in the Magistrate Division that that deadline was correct, even after the magistrate questioned that in a hearing, and even after obtaining increasingly clear advice and direction that the deadline was incorrect. To pursue that issue would have required taxpayers to analyze and present a legal argument challenging the sufficiency of the notice. Taxpayers instead conceded that avenue of appeal and tried to make the factual argument that their untimely filing was due to "good and sufficient cause," an effort that failed. The court recognizes that a party is responsible for managing its own case, but whatever weight the court might otherwise give to taxpayers' concession that their appeal under the normal avenue was untimely is completely extinguished by the assessor's ongoing failure to admit that her own stated deadline for appeal was wrong. The assessor had time to make that admission before the magistrate issued a final decision, but the assessor chose not to do so. The court will award attorney fees, limited to fees related to the issue of the timeliness of taxpayers' complaint in the Magistrate Division.

## C.   *Amount of Fee Award*

The court now turns to the amount of fees as specified in ORS 20.075(2). As an initial matter, the court concludes that more fees may be allowed than the cap amount that the department describes ($5,877.50), because the department did not include fees attributable to requesting reimbursement for fees. *See Seneca Sustainable Energy, LLC III v. Dept. of Rev.*, 23 OTR 22, 56 (2018) (reiterating that "fees on fees" are eligible for an award). The court finds that the time entries for February 14, March 8, June 12, June 28, and the four time entries on July 9 and 10, 2019, are substantially related to seeking fee reimbursement and add up to $3,482.50 in addition to the amount of the cap the department cites.[5] With this aggregate maximum amount

---

[5] In addition, the court includes one post-answer time entry in the amount of $135, for October 16, 2018, because that time appears entirely dedicated to using records obtained from Clackamas County in a public records request, as discussed below.

in mind ($9,495), the court now reviews the statutory factors relevant to the amount of a fee award.

Subsection (2) of ORS 20.075 first directs the court to consider the same factors just discussed. The foregoing analysis does not indicate any basis to reduce the fee award below the amount actually and reasonably incurred through taxpayers' review of the answer. Regarding paragraph (a) (time required, difficulty, and skill needed for the task), the court finds that reconstructing what happened in the Magistrate Division, based on an informal process and in consultation with clients who are not lawyers and were not represented in the Magistrate Division, would not have been an easy or routine task. Figuring out the flaw in the assessor's argument and probing for evidence to show that the assessor discovered the flaw during the case, required skill and experience. The court does not consider paragraph (b) (whether this case precluded taxpayers' counsel from taking other cases) particularly relevant, as counsel is part of a law firm with staff, the matter is not large, and taxpayers are individuals whom counsel describes as existing clients and who thus are not likely to create a conflict of interest that precludes taking other cases. Regarding paragraph (c), the hourly rates charged are not excessive for the Portland area, based on taxpayers' uncontested market data. Regarding paragraph (d), the amount of fees related to the dismissal issue is substantially higher than the amount of tax actually refunded ($3,866.73), but the court must take into account that an annual additional tax amount attributable to the purported roll change may continue to be charged for years—perhaps many years—into the future. Paragraph (e) refers to the time limitations imposed by the client (of which there is no evidence) or the circumstances of the case. In this case, taxpayers' counsel had to act quickly to file the complaint in this division because of the short, 60-day deadline to appeal from a Magistrate Division decision. However, the court sees no evidence that the deadline affected the amount counsel billed. Paragraph (e) is a neutral factor. Paragraph (f) (client relationship) also is neutral: the fact that counsel knows taxpayers well may have made counsel's work more efficient, but the court also assumes that that efficiency is reflected in counsel's higher hourly rate. Paragraph (g)

(counsel's experience level) already is reflected in paragraph (a) above. Regarding paragraph (h) (fixed or contingent fee), taxpayers describe the arrangement as "a fixed fee matter, billed at an hourly rate." The department does not challenge this arrangement or suggest that an amount less than the fees billed is appropriate because of this factor. The court grants taxpayers' request for attorney fees billed to date in the amount of $9,495.

D.   *Costs and Expenses*

         The department objects generally to an award of costs and also objects specifically to any award to reimburse taxpayer for public record charges imposed by Clackamas County as not reasonable and necessary to the prosecution of this action. The court disagrees, finding on the basis of the time entries that taxpayers made the public records request in August 2018, before the department filed its answer. The internal emails that Clackamas County provided in response to that request were among several documents that revealed the assessor's knowledge about the weakness of the position that it persisted in maintaining. These facts influenced the court's decision to exercise its discretion to find in taxpayers' favor on the question of timeliness on which this fee award is based. Accordingly, the court allows as an expense the $490 charge from Clackamas County to divulge the emails, as well as a Tax Court filing fee in the amount of $265, and postage and copy charges amounting to $13.25.  The total costs and expenses allowed are $768.25.

E.   *Post-Judgment Proceedings*

         Finally, taxpayers seek an additional $3,600 in anticipated fees that taxpayers estimate they would incur in "post-judgment proceedings." The court rejects this claim as nonsense. The narrative accompanying this claim states:

> "Post-judgment proceedings in this case include negoti-ating a payment plan and traditional collection efforts. *** [taxpayers] estimate that the primary litigator, Jason Wright, will spend approximately eight hours negotiating a payment plan and if necessary, preparing debtor inter-rogatories, conducting debtor examinations, and preparing writs of garnishment on behalf of [taxpayers]."

The court sees absolutely no basis for counsel Wright or any-one else to conduct a judgment debtor examination of the Oregon Department of Revenue, prepare writs of garnish-ment against it, or negotiate a payment plan with it. The court adds nothing for post-judgment proceedings to the amounts determined above.

## IV. CONCLUSION

The court thus awards attorney fees, costs, dis-bursements and expenses in favor of taxpayers in the total amount of $10,263.25. The court directs counsel for tax-payers to submit an appropriate form of judgment. Now, therefore,

IT IS ORDERED that Plaintiffs' Request for Award of Attorney Fees, Costs and Disbursements is granted.